## Commonwealth *v.* One 1958 Plymouth Sedan (McGonigle, Appellant).

458

Argued November 20, 1963; reargued January 17, 1964. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Paul M. Chalfin,* with him *Louis Lipschitz,* for appellant.

*Thomas J. Shannon,* Assistant Attorney General, with him *James Iannucci,* Special Assistant Attorney General, *J. Leonard Langan,* Assistant Attorney Gen-

eral, and *Walter E. Alessandroni*, Attorney General, for Commonwealth, appellee.

OPINION BY MR. JUSTICE JONES, June 30, 1965:

At approximately 6:30 a.m. on December 16, 1960, two officers of the Pennsylvania Liquor Control Board, stationed near the approach to the Benjamin Franklin bridge in New Jersey, observed a 1958 Plymouth sedan bearing Pennsylvania license plates proceeding toward the bridge in the direction of Philadelphia. Noting that "the car was low in the rear, quite low", the officers followed the automobile across the bridge into Philadelphia where they stopped and searched the automobile without first having obtained either a body or a search warrant. Their search revealed that the rear seat and back-rest of the automobile had been removed and that the rear and trunk of the automobile contained 375 bottles of whiskey and wine, none of which bore Pennsylvania tax seals.

Both the car and alcoholic beverages were seized. The Commonwealth instituted proceedings for the forfeiture of the automobile, pursuant to §601 of the Liquor Code of 1951,[1] in the Court of Quarter Sessions of Philadelphia County. That court dismissed the forfeiture proceedings on the ground that the attempted forfeiture of the automobile was founded upon evidence illegally obtained, i.e., without a search warrant and without probable cause. The Superior Court reversed, three judges dissenting, and we granted an allocatur.

---

[1] Act of April 12, 1951, P. L. 90, §601, as amended, 47 P.S. §6-601, which provides: "No property rights shall exist in any . . . vehicle . . . used in the . . . illegal transportation of liquor, alcohol or malt or brewed beverages, and the same shall be deemed contraband and proceedings for its forfeiture to the Commonwealth may, [at the Board's discretion], be instituted."

On appeal to this Court, we affirmed the judgment of the Superior Court.[2] (*Commonwealth v. One 1958 Plymouth Sedan,* 414 Pa. 540, 201 A. 2d 427). The basis of our decision was that the exclusionary rule of *Mapp v. Ohio,* 367 U.S. 643, 81 S. Ct. 1684, applied only to criminal prosecutions and not to a forfeiture proceeding which we deemed civil in nature.

The Supreme Court of the United States (379 U.S. 927, 85 S. Ct. 323), granted certiorari and held that the exclusionary rule of *Mapp* does apply to forfeiture proceedings and reversed the judgment of this Court (*One 1958 Plymouth Sedan v. Commonwealth of Pennsylvania,* 380 U.S. 693, 702, 85 S. Ct. 1246, 33 L.W. 4387). In so reversing, however, the United States Supreme Court stated: "Our holding frees the Pennsylvania court on remand to review the trial court's finding that the officials did not in this case have probable cause for the search involved, a question which it previously did not consider necessary to decide."

In line with the order and opinion of the United States Supreme Court, we now turn to a determination of the issue whether the enforcement officers had *reasonable* and *probable* cause to stop and search this automobile for contraband liquor. If they did have "reasonable and probable cause" to search the automobile, then the search and seizure of the alcoholic beverages were proper, the evidence was admissible and the automobile, on the basis of such evidence, was subject to forfeiture. If they did not have "reasonable and probable cause" to make the search, then the evidence revealed by the search was illegally obtained, was inadmissible under *Mapp v. Ohio,* supra, and the automobile was not subject to forfeiture.

The enforcement officers, as peace officers, are granted by statute ". . . police power and authority . . .

---

[2] Mr. Justice MUSMANNO dissented.

to arrest on view, except in private homes, without warrant, any person engaged in the unlawful... importation . . . or transportation, or having unlawful possession of liquor. . . . Such officers . . . shall have power and authority, upon reasonable and probable cause, to search for and to seize without warrant or process, except in private homes, any liquor . . . unlawfully possessed . . . imported or transported and any . . . vehicles . . . which are or have been used in the unlawful . . . importation or transportation of the same": Liquor Code of 1951, supra, §209, 47 P.S. §2-209. Section 209 sets forth the standard of conduct which controlled the power and authority of these enforcement officers to stop and search this automobile and to seize the untaxed liquor in the case at bar but "the standard of probable cause is the same in the state courts as in the federal courts."[3]

The Fourth Amendment to the U. S. Constitution "does not denounce all searches or seizures, but only such as are unreasonable." (*Carroll v. U.S.*, 267 U.S. 132, 147, 45 S. Ct. 280, 283; *Commonwealth v. Bosurgi*, 411 Pa. 56, 66, 190 A. 2d 304) and the propriety of the search and seizure depends on the *reasonableness* thereof. "On reason and authority the true rule is that if the search and seizure without a warrant are made upon probable cause, that is, upon a belief, reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction, the search and seizure are valid": *Carroll*, supra, 267 U.S. at 149, 45 S. Ct. at 283, 284.

In making a search without a warrant, recognition has been given to a distinction between the search of a

---

[3] Mr. Justice BLACK's concurring opinion in *One 1958 Plymouth Sedan v. Commonwealth of Pennsylvania*, supra, 380 U.S. at 705, 85 S. Ct. at 1253.

*movable* as opposed to an *immovable* object of the search. In *Carroll,* supra, 267 U.S. at 153, 45 S. Ct. at 285, the U. S. Supreme Court noted this distinction and the reason therefor: ". . . the guaranty of freedom from unreasonable searches and seizures by the Fourth Amendment has been construed, practically since the beginning of the government, as recognizing a necessary difference between a search of a store, dwelling house or other structure in respect of which a proper official warrant readily may be obtained and a search of a ship, motor boat, wagon or automobile for contraband goods, where it is not practicable to secure a warrant, because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought." See also: *Brinegar v. U. S.,* 338 U.S. 160, 69 S. Ct. 1302; *U. S. v. Haith,* 297 F. 2d 65 (4th Cir. 1961); *Ray v. U. S.,* 255 F. 2d 473 (4th Cir. 1958); *Commonwealth v. One 1955 Buick Sedan,* 198 Pa. Superior Ct. 133, 182 A. 2d 280. While a warrant may not be necessary for the stoppage and search of a moving automobile, such rule does not relax the requirement that the officers *must* have "reasonable or probable cause" to believe that the automobile contains contraband. Without a warrant the officers take a calculated risk; the search and seizure must be shown to have been upon reasonable and probable cause, i.e., that the officers had reasonable grounds to believe an offense has been or is being committed. The character of the object to be searched goes to the question of justification for not having obtained a search warrant; in no manner does it alter the requirement that reasonable and probable cause must exist to justify the search.

The determination of what is "reasonable or probable" cause upon which can be based a lawful search and seizure is often most difficult. Recently, we said: "The 'reasonableness' of a search and seizure must be

464

determined on an ad hoc basis, i.e., on the facts and the circumstances of each particular case. In U.S. v. Rabinowitz, 339 U.S. 56, 70 S. Ct. 430, 434, the Court said: 'What is a reasonable search [and seizure] is not to be determined by any fixed formula. The Constitution does not define what are "unreasonable" searches and, regrettably, in our discipline we have no ready litmus-paper test. The recurring questions of the reasonableness of searches must find resolution in the facts and circumstances of each case [citing a case].' [Citing cases].": *Commonwealth v. Bosurgi,* 411 Pa. at 65, 66.

Many years ago this Court stated that "probable cause" depends upon the honest and reasonable belief of the officer (*Smith v. Ege,* 52 Pa. 419), and must be judged by the totality of the circumstances existing at the time of the search and seizure (*McCarthy v. De Armit,* 99 Pa. 63, 69). In *Bosurgi,* supra, 411 Pa. at 67, 68, we said on the subject of "probable cause": " 'Probable cause' has been said to exist 'where "the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that" ' an offense has been or is being committed and that the person to be arrested has committed or is committing the offense: [citing cases]. However, '. . . an arrest with or without a warrant must stand upon firmer ground than mere suspicion . . . though the arresting officer need not have in hand evidence which would suffice to convict . . .': [citing a case]. Judge LEARNED HAND, speaking for the Court, in U. S. v. Heitner, 149 F. 2d 105, 106 (2nd Cir. 1945) well stated: 'It is well settled that an arrest may be made upon hearsay evidence; and indeed, the "reasonable cause" necessary to support an arrest cannot demand the same strictness of proof as the accused's guilt upon a

trial, unless the powers of peace officers are to be so cut down that they cannot possibly perform their duties. . . .'

" 'Reasonable' or 'probable' cause, difficult as those terms are of exact definition, are exceedingly difficult in their application to the facts and circumstances of a particular case. The language of Mr. Justice RUT-LEDGE in Brinegar v. U. S., 338 U.S. 160, 175, 69 S. Ct. 1302, 1310, may well act as a guide: 'In dealing with probable cause . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' "

Did the factual situation on December 16, 1960, present to these enforcement officers a totality of circumstances upon which the officers could base a "reasonable and probable" belief that this automobile was engaged in the unlawful possession or transportation of untaxed liquor? One officer testified that the reason the automobile was followed was because the automobile "was low in the rear, quite low", that he had a *suspicion* the automobile was illegally transporting liquor although, until stoppage of the automobile, he observed no violation of the law. On direct examination, the second officer stated he had *reason to believe* "a late model black four-door sedan, Plymouth, was delivering liquor illegally into Pennsylvania from a dealer in South Jersey"; on cross-examination, he stated he secured "information" from previous observations although he candidly stated he had never previously observed this automobile and he was unable to explain any basis for his "reason to believe" as stated on direct examination. In addition to this testimony, the Commonwealth urges we consider other factors in determining the existence of "reasonable and probable cause"; that this automobile when first seen was in

New Jersey, that the automobile was travelling into Pennsylvania at 6:30 in the morning, that the incident took place just prior to the Christmas holidays, the geographical proximity of Philadelphia to New Jersey and that the officers "knew a similar car was engaged in the transportation of liquor."[4] Such circumstances may have aroused speculation or suspicion on the officers' part but they do not meet the standard and quality of evidentiary proof required to satisfy the mandate of the Fourth Amendment and the decisional law interpretive thereof.

The majority opinion in the Superior Court states, inter alia: "A state should have the right to stop a traveler coming into the state and to search his belongings to ascertain whether he is bringing into the state any property upon which a state tax is due. The Commonwealth of Pennsylvania has a sales tax, a liquor tax and a cigarette tax, and if its officers may not stop vehicles coming into the state to ascertain whether its laws are being violated, law enforcement will be greatly impeded". With the suggestion implicit in this language that state taxing statutes require a modification of the requirement and mandate of the Fourth Amendment we disagree: the Fourth Amendment makes no such distinction and applies to *all* searches and seizures. A complete answer to such a suggestion was given by Chief Justice TAFT in *Carroll*, supra, 267 U.S. at 153, 154, 45 S. Ct. at 285: "It would be intolerable and unreasonable if a prohibition agent were authorized to stop every automobile on the chance of finding liquor, and thus subject all persons lawfully using the highways to the inconvenience and indignity of such a search. Travelers may be so stopped in crossing an international boundary because of national self-protection reasonably requiring one entering the coun-

---

[4] Whence this knowledge arose is not upon this record.

try to identify himself as entitled to come in, and his belongings as effects which may be lawfully brought in. But those lawfully within the country, entitled to use the public highways, have a right to free passage without interruption or search unless there is known to a competent official, authorized to search, probable cause for believing that their vehicles are carrying contraband or illegal merchandise." See also: *Beck v. Ohio,* 379 U.S. 89, 85 S. Ct. 223.

The nature of the offense suspected does not in any manner relax or alter the requirement that a moving vehicle can only be stopped and searched without a warrant if the stopping and searching officer has reasonable and probable cause to believe an offense has been or is being committed. In the case at bar, such reasonable and probable cause has not been shown and the search of the automobile and the seizure of its contents cannot be constitutionally justified.

Order reversed.

———

CONCURRING OPINION BY MR. JUSTICE MUSMANNO:

I concur wholeheartedly in the majority opinion. I had dissented from the previous decision of this Court on the subject, which decision was appealed to the Supreme Court of the United States and there reversed. I would like to add but one comment to the excellent majority opinion. The Commonwealth urged in behalf of "reasonable and probable cause" for stopping the automobile in Philadelphia, the facts that the automobile was first seen in New Jersey, that it was traveling into Pennsylvania at 6:30 a.m., that the search occurred immediately prior to the Christmas holidays, the geographical contiguity of Philadelphia and New Jersey, and that the officers "knew a similar car was engaged in the transportation of liquor." Each one of these factors, or all of them put together, could be repeated thousands of times just before Christmas,

which would mean that, if legal search were to be allowed, thousands of motorists would be subjected to the annoyance, inconvenience and delay-consuming stops just because a police officer "knew a similar car was engaged in the transportation of liquor." There must be something a little more distinctive than the common features here enumerated to justify the stopping of numberless motorists honestly pursuing their legitimate errands so that an officer may have the opportunity to look for the moving needle in the thousands of traveling vehicular haystacks.

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

This case, having been argued and reargued before us previously, is now before our Court for the third time. In addition, the controversy was heard by the Superior Court before coming to us on allocatur and, after our decision, was heard by the Supreme Court of the United States. This history presents an unfortunate and striking illustration of unnecessary and wasteful imposition upon the judicial machinery caused by the deliberate failure to observe mandated state trial procedures.

It is regrettable indeed that even at this late stage a majority of this Court still persists in ignoring the clearly controlling provisions of our state law and, as a result, unnecessarily reaches a federal question. Section 602 of the Liquor Code[1] provides: "(b) A copy of said petition [for forfeiture] shall be served personally on said owner if he can be found within the jurisdiction of the court, or upon the person or persons in possession at the time of the seizure thereof. Said copy shall have endorsed thereon a notice as follows:

" 'To the Claimant of Within Described Property: You *are required to file an answer* to this petition, set-

---

[1] Act of April 12, 1951, P. L. 90, 47 P.S. §6-602.

ting forth your title in and right to possession of said property, within fifteen (15) days from the service hereof; and you are also notified that *if you fail to file said answer, a decree of forfeiture and condemnation will be entered against said property.'*

. . .

"(d) Upon the filing of any claim for said property, setting forth a right to possession thereof, the case shall be deemed at issue and a time fixed for the hearing thereof." (Emphasis supplied.)

When this case was last before our Court, I urged in a concurring opinion[2] that this controversy was conclusively determined by the failure of the claimant of the vehicle to comply with the above provisions of the Liquor Code. The uncontradicted record fact is that the petition for forfeiture contained the required notice to claimant in the precise, statutory language and that no answer or claim was filed as required by the code. Under such circumstances, all that the Liquor Code commands, or indeed permits, is the entry of the formal decree of forfeiture. That is all that the court below was legally authorized to do. That is all that remained to finally complete the forfeiture proceeding. The evidentiary hearing below on the merits was, under the circumstances, completely unauthorized, unnecessary and contrary to the provisions of the code.

Surely, there is nothing new or unusual in default judgments or decrees. Our reports are replete with innumerable decisions of our appellate courts sustaining, as well as directing, the entry of default adjudications against parties who deliberately failed to observe basic procedural requirements. Why it should not be so here, particularly in the face of the clear mandate of the code and the undisputed record of default, I am unable to understand. It seems beyond

---

[2] 414 Pa. 540, 547, 201 A. 2d 427, 431 (1964).

doubt that a time limitation on answering the petition for forfeiture is a procedural requirement which is reasonably designed to serve a legitimate end in promoting efficiency in our state judicial practice. Compare *Henry v. Mississippi*, 379 U.S. 443, 85 S. Ct. 564 (1965). That time requirement should be enforced here. In a similar situation, the federal courts have long held that failure to comply with the requirement of Fed. Rules Cr. Proc. Rule 41, §18 U.S.C.A. (requiring timely motion to suppress) waives a claim of illegal search and seizure. E.g., *United States v. Shavin*, 320 F. 2d 308 (7th Cir.), cert. denied, 375 U.S. 944, 84 S. Ct. 349 (1963); *United States v. Watts*, 319 F. 2d 659 (2d Cir. 1963); *Garcia v. United States*, 315 F. 2d 133 (5th Cir. 1963).

I respectfully submit that the remand by the Supreme Court of the United States does not preclude this Court from disposing of this case on the ground which I have suggested. A study of the record and of the briefs shows that the state procedural ground was not raised in that Court. It therefore appears that the Supreme Court of the United States was assuming the fulfillment of all state procedural requirements when it addressed itself to the federal search and seizure question as framed by the previous majority opinion filed by this Court. Under such circumstances I can see no reason why we are not free to decide this case on any proper basis which was not rejected by the Supreme Court of the United States.

I believe that the proper basis for disposing of this case is on the procedural ground that no evidentiary issue was ever properly presented. So believing, I would direct that an order of forfeiture be entered.