## Commonwealth v. Strine

*George D'Ambrosio,* Assistant District Attorney, for Commonwealth.

*A. Charles Peruto* and *Domenick Vitullo.,* for defendants.

WILLIAMS, J., January 19, 1971.—William Strine was indicted on four bills of indictment, October sessions, 1970, nos. 1242-1245, the charges being, respectively, receiving stolen goods, unlawful possession of liquor, possession of burglary tools and attempted larceny. A codefendant, Fred Jones, was indicted on bills, October sessions, 1970, nos. 1246-1249, charged with the same offenses. Prior to trial, this court entertained an oral motion on behalf of both defendants to suppress evidence seized at the time defendants were arrested. After a hearing on the motion, this court granted the motion and ordered the seized evidence suppressed as to both defendants. It is from that suppression order that the Commonwealth now appeals.

The search and seizure here in question arose from the following factual background: At about 5:40 a.m. on September 20, 1970, two police officers of the Philadelphia Police Department were riding in a patrol wagon in the area of Ridge Avenue and Shawmont Street in Philadelphia. They observed an out-of-State automobile, with its headlights on, situated on

the lot of a closed gas station. A man and a female were in the car and a second man was standing at the gas station's outdoor vending machine. The two arresting police officers continued on their way past this scene. The officers thereafter decided to return to the scene. Officer Phillip Riehl, the only police officer to testify, testified that the reason for returning was that the car was from out-of-State and they wanted to see if there was a problem or if there was something the police officers could do.

By the time the officers returned to the gas station, the man who had been at or near the vending machine, identified as defendant, William Strine, was in the automobile with two other persons in the front seat. The car, although in the process of leaving the lot, had not left this lot when the police officers pulled behind the automobile with the patrol wagon and stopped the vehicle. Officer Riehl testified he wanted to check the operator's license and registration cards. At this time, the operator of the vehicle, codefendant Fred Jones, produced a driver's license and a registration card, the former being in the name of a male and the latter in the name of a female.

Though the officer had no information that the vehicle was stolen or sought in any way, Officer Riehl took the cards back to his partner, who was still in the patrol wagon, and had him radio for information about the vehicle. Without waiting for an answer of any kind, Officer Riehl returned to the vehicle and ordered all the occupants of the vehicle to get out. Officer Riehl then looked in the vehicle and saw some keys on the front seat. According to this officer, the keys appeared to be the type used to open vending machines. Next, he took his entire body into the vehicle and saw a bag on the back seat inside of which were six bottles of liquor bearing Maryland tax

stamps. On the rear floor, he discovered an instrument described by the officer as a "pull bar." On the floor under the front seat, he found some other bags containing about $292 in coins, in addition to finding more keys, all of which were seized and sought to be used as evidence against the defendants.

It is established that what the officer found in the vehicle cannot determine the validity of the search: Wong Sun v. United States, 371 U.S. 471 (1963). It is equally clear that since the policeman had no search warrant, it became incumbent upon the Commonwealth to demonstrate that probable cause for the search existed at the time the search commenced: Commonwealth v. Pinno, 433 Pa. 1, 248 A. 2d 26 (1968); Commonwealth v. One 1958 Plymouth Sedan, 418 Pa. 457, 211 A. 2d 536 (1965). In order to validate a search without a warrant, it is necessary that facts and circumstances known to the officer create a reasonable belief that a crime has been or is being committed: Commonwealth v. One 1958 Plymouth Sedan, supra. A car may not be searched unless there is probable or reasonable cause to believe that someone in the car has or is committing some crime. Therefore, the issue in the instant case narrows to two points: At what point did the search commence, and, at that time did the officer have probable cause to believe a crime had been committed.

A search occurs when there is a police intrusion into a private area to uncover what is concealed there and use it as evidence of guilt. See Commonwealth v. Anderson, 208 Pa. Superior Ct. 323, 222 A. 2d 495 (1966); Commonwealth v. Calvarese, 199 Pa. Superior Ct. 319, 185 A. 2d 657 (1962). The term "search" connotes prying into hidden areas. It is the determination of this court that a search occurred when Officer Riehl ordered the three people out of the

car in which they were riding. This court finds, as a matter of fact, that the purpose in removing the people from the vehicle was to enable the arresting officers not only to view the interior of the vehicle but also to conduct a search thereof. Officer Riehl himself stated that prior to making them get out of their vehicle, he had observed no criminal conduct, had no information that the vehicle was stolen or that the occupants of the vehicle had engaged in some criminal conduct. In addition, the officer stated that he had no fear of these people. Nor is there any evidence to indicate that they attempted to flee, even when the officer went back to his patrol wagon with the cards.

After full consideration of Officer Riehl's testimony and demeanor, it is the conclusion of this court that the officer's purpose in removing the occupants from the vehicle was to facilitate his viewing what was inside and was in preparation for his entering the vehicle to conduct a search. The initial fruit of this conduct was his observation of the keys on the front seat. Accordingly, removing the occupants from the vehicle constituted a search; and since there was no probable cause for this search, it was constitutionally invalid. Thus, the keys on the front seat and all other items found in the vehicle were the fruit of an illegal search and, as such, were not admissible into evidence.

Though as a general rule, there is no search when an officer observes items in plain view from a vantage point he legally occupies, such a rule should have no application in this case. For, in this case, the power of observation was created by illegally removing the people from their vehicle. See Glisson v. United States, 406 F. 2d 423 (5th Cir., 1968).

The police officers in this case perhaps had their suspicions and those suspicions may have been reasonable. However, a search in order to be valid must

rest upon "reasonable cause" not "reasonable suspicion": Commonwealth v. Hicks, 434 Pa. 153; Commonwealth v. Bosurgi, 411 Pa. 56, at 67, 68, 190 A.2d 304 (1963). In the instant case, the record is devoid of any evidence to show that the search was founded on anything but mere suspicion.

Therefore, the order of this court suppressing the evidential fruit of that search should be sustained.