**UNITED STATES of America ex rel. John J. BOYKINS**

v.

**COMMONWEALTH OF PENN-SYLVANIA.**

Civ. A. No. 71-589.

United States District Court, E. D. Pennsylvania.

July 9, 1971.

---

John J. Boykins, pro se.

Michael J. Kane, Asst. Dist. Atty., Bucks County, Doylestown, Pa., for respondent.

### OPINION AND ORDER

JOSEPH S. LORD, III, District Judge.

This habeas corpus relator seeks his release from prison where he is serving a sentence for burglary following his conviction in June, 1968. He argues that evidence introduced against him at trial was seized by the government in violation of his Fourth Amendment rights.

From the state record, which we have carefully reviewed, the following facts appear:

The victim of the burglary called police shortly after 7 p. m. on January 10, 1968, after she returned home and found two persons fleeing from her house. When the police arrived, Officer Joseph Doris noted that the rear door had been forced open, that the house had been ransacked, and that there were two sets of footprints leading from the rear door. He also got a description of one of the men from a neighbor.

While the investigation at the burglary scene was taking place, police from Lower Makefield Township, unaware of any burglary, received a radio call to proceed to a gas station, whose owner had complained of two men loitering around his station. Officer Robert Margerum, the first to arrive, learned from the station owner that the men were "suspicious", that they were asking his customers for rides and that they had been in an area where several cars were parked for servicing. He spoke briefly with one of the men, Leo Gillis, who was in the office, and then talked with Boykins, who had walked out of the phone booth nearby. At that time, Officer Rudolph Fatyol arrived and was told by Officer Margerum basically what the station owner had said. Fatyol spoke briefly with Gillis, who was still in the office, and with Boykins. Both told him that they had been ordered out of a girl friend's car and were trying to get a ride to Bristol. Officer Fatyol then told his fellow officer that the men should be taken to headquarters for further interrogation, and told the two men that they were "technically" under arrest. He proceeded to frisk them for security reasons and discovered watchbands in Gillis' pockets and money in Boykins' pockets by patting the pockets and reaching inside. He did not remove the articles.

"Just about this time," Officer Doris of the Falls Township police arrived, took Officer Fatyol aside, and told him that a burglary had occurred nearby a

short time before and that Gillis resembled the description given him of one of the men. Officer Fatyol then told Gillis and the petitioner that they were under arrest, advised them of their constitutional rights, and, with the aid of the other officers, took them to police headquarters. There, the assistant chief requested the suspects to empty their pockets. Various coins came from petitioner's pockets and assorted jewelry from Gillis' pockets. Petitioner argues that the seizure of the coins violated his Fourth Amendment rights and that neither the coins nor evidence of them should have been introduced against him at trial.

The search and seizure at headquarters is a valid stationhouse search incident to arrest unless it was the fruit of illegal police activity. *See* United States v. DeLeo, 422 F.2d 487, 493 (C.A.1, 1970).

Petitioner was placed under arrest after Officer Fatyol finished talking with Gillis and him. Neither officer at that time could have had probable cause to believe the two men had committed any crime. An arrest with or without a warrant must stand on firmer ground than mere suspicion. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Commonwealth v. One 1958 Plymouth Sedan, 418 Pa. 457, 464, 211 A.2d 536 (1965). Officer Fatyol's arrest was based on mere suspicion, and was thus illegal. It follows that the cursory warrantless search he made on the spot was illegal, since it was not incident to a legal arrest. *See, e. g.*, Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964).

We come therefore to the issue of whether the evidence gained from the later search should be suppressed or whether the link between the illegal arrest and the search at headquarters was so weakened by the intervening information furnished by Officer Doris, which gave probable cause to arrest, that the evidence was properly admitted. In *Wong Sun, supra,* the Court said, 371 U.S. at page 488, 83 S.Ct. at page 417:

" * * * [T]he more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' "

In this case, there is no hint that the evidence uncovered by the legal stationhouse search was gained by any exploitation of the original illegality. The essence of Supreme Court doctrine in this area is that the police shall not be allowed to benefit from illegal conduct in gaining convictions. *Cf.* Mapp v. Ohio, 367 U.S. 643, 656, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

The illegal arrest of Boykins in no way benefited the police. Boykins and Gillis would have been at the gas station when Officer Doris arrived even if Officer Fatyol had not arrested them. Testimony at the suppression hearing and the trial in the state court established that one of the men was at the gas station office during the time Officer Fatyol questioned him. It was therefore highly unlikely that the questioning, "technical" arrest and frisk kept the suspects from catching a ride which would have taken them away from the station before Officer Doris arrived. After Fatyol was given the information about the burglary and the description, the police acted as they should have in taking the suspects into custody. There is no indication that the illegal cursory search at the gas station had any connection with the later search at headquarters.

In any event, in United States ex rel. Bishop v. Rundle, 437 F.2d 204 (C.A.3, 1971), the court refused to exclude a confession, even though an illegal arrest held relator in custody for three and a half hours, during which another state agency obtained probable cause for arrest.

We therefore conclude that the evidence introduced against petitioner as a result of the headquarters search was

not "come at by exploitation of" the illegal police conduct, Wong Sun v. United States, *supra*, and thus its use did not violate his Fourth Amendment rights.

### ORDER

And now, this 9th day of July 1971, it is ordered that the petition for a writ of habeas corpus be and it hereby is denied.

There is no probable cause for appeal.