## Betrand Appeal.

Argued January 9, 1973. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Stuart H. Schuman*, Assistant Defender, with him *Jonathan Miller*, Assistant Defender, and *Vincent J. Ziccardi*, Defender, for appellant.

*James T. Ranney*, Assistant District Attorney, with him *Milton M. Stein*, Assistant District Attorney, *Richard A. Sprague*, First Assistant District Attorney, and *Arlen Specter*, District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE ROBERTS, April 13, 1973:

On January 8, 1971, a pharmacist and his assistant were beaten and robbed by three unidentified males on Germantown Avenue in Philadelphia at approximately 8:00 p.m. Almost six weeks later the police received an anonymous phone call from a youth who said that one of the participants in that robbery was named "Primo" and that "Primo" lived in a certain area of Philadelphia. Two days later, appellant, George Betrand, a juvenile, known to the police as "Primo", was arrested without a warrant. He was taken immediately to the station house and placed in a locked interrogation room where he remained for approximately two hours. A detective subsequently arrived and advised him of his rights by reading from the standard police interrogation card. After approximately one-half hour of questioning, appellant gave an oral statement admitting his involvement in the robbery.

Appellant was charged with robbery, assault with intent to kill, aggravated assault and battery, and conspiracy. He was adjudicated delinquent by the Juvenile Division of the Family Court of Philadelphia and committed to the Youth Development Center, South. Following that determination he appealed to the Superior Court which affirmed the adjudication of delinquency. *Betrand Appeal*, 222 Pa. Superior Ct. 67, 293 A. 2d 359 (1972) (PACKEL, J., dissenting, joined by HOFFMAN, SPAULDING, JJ.) We granted allocatur. Appellant contends that his confession was the fruit of an illegal arrest and was also the product of an involuntary and unintelligent waiver of his Fifth Amendment right against self incrimination.[1] We reverse and remand.

---

[1] Because we hold today that appellant's confession was inextricably tainted by the illegal arrest, and thus inadmissible, we need not reach appellant's related contention that his waiver of his Fifth Amendment rights was involuntary.

At this late date it is uncontrovertibly beyond dispute that the Constitution of the United States prohibits the arrest of a person unless the arresting officer has probable cause to believe that a crime has been or is being committed. *McCray v. Illinois*, 386 U.S. 300, 87 S. Ct. 1056 (1967); *Ker v. California*, 374 U.S. 23, 83 S. Ct. 1623 (1963); *Henry v. United States*, 361 U.S. 98, 80 S. Ct. 168 (1959); *Carroll v. United States*, 267 U.S. 132, 45 S. Ct. 280 (1925); *Commonwealth v. Goslee*, 427 Pa. 403, 234 A. 2d 849 (1967); *Commonwealth v. Ellsworth*, 421 Pa. 169, 218 A. 2d 249 (1966); *Commonwealth v. Bosurgi*, 411 Pa. 56, 190 A. 2d 304 (1963). Probable cause has repeatedly been held to exist only "where 'the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that 'an offense has been or is being committed'." *Brinegar v. United States*, 338 U.S. 160, 175-76, 69 S. Ct. 1302, 1311 (1949), quoting *Carroll v. United States*, supra at 162, 45 S. Ct. at 288; see *McCray v. Illinois*, supra; *Ker v. California*, supra; *Commonwealth v. Goslee*, supra; *Commonwealth v. Ellsworth*, supra. See also *Commonwealth ex rel. Grano v. Anderson*, 446 F. 2d 272, 273 (3d Cir. 1971).[2]

It is also well settled that even hearsay information is sometimes sufficient to establish probable cause. See *Draper v. United States*, 358 U.S. 307, 79 S. Ct. 329 (1959); *Brinegar v. United States*, supra. However,

---

[2] In *Grano*, the Third Circuit noted that probable cause depends upon two criteria:

(1) a belief that the offense has been committed;

(2) sufficient basis for a finding of probable cause that the party under suspicion committed the offense charged. 446 F. 2d 272, 273 (3d Cir. 1971). See generally Note, The United States Courts of Appeals: 1971-1972 Term Criminal Law and Procedure, 61 Geo. L. J. 280, 305 (1972).

when, as here, probable cause for a warrantless arrest[3] is based on such hearsay information supplied by an anonymous informer, the arresting officer must have two types of additional information before probable cause is established. First, in order to assure that the tip is not merely an unsupported rumor, the officer must know the underlying circumstances from which the informer concluded that the suspect participated in the robbery. Second, in order to reduce the possibility that a tip meeting the first standard is merely a well-constructed fabrication, the officer must have some reasonable basis for concluding that the source of the tip was reliable. *Spinelli v. United States,* 393 U.S. 410, 89 S. Ct. 584 (1969); *Aguilar v. Texas,* 378 U.S. 108, 84 S. Ct. 1509 (1964); *Commonwealth v. Garvin,* 448 Pa. 258, 293 A. 2d 33 (1972); cf. *Commonwealth v. Mamon,* 449 Pa. 249, 297 A. 2d 471 (1972).

Applying the *Aguilar-Spinelli* standards here it is patently clear that the informant's tip, the *sole basis* for appellant's arrest, was insufficient to establish probable cause. First, the tip came from an unidentified informant, who supplied no indication that he had any personal knowledge of the crime whatsoever. His information was completely conclusory with no underlying facts or circumstances to bolster his report. The anonymous caller merely told the police that the suspect's name was "Primo" and indicated where "Primo" lived—nothing more. Thus the first requirement of *Aguilar-Spinelli*—underlying circumstances supporting an informant's conclusion—was clearly absent here.[4]

---

[3] Since the police may not make a warrantless arrest unless the facts within their knowledge would justify the issuance of a valid warrant, *Whitely v. Warden,* 401 U.S. 560, 91 S. Ct. 1031 (1971); *McCray v. Illinois,* 386 U.S. 300, 87 S. Ct. 1056 (1967), then a fortiori probable cause for the issuance of a warrant must be identical to probable cause to make a warrantless arrest.

[4] The Supreme Court cautioned in *Spinelli* that a tip may very well be a casual rumor circulating in the underworld or an accu-

Secondly, as appellant succinctly points out "the record is devoid of underlying circumstances showing [any] reason to believe that the informant himself was a credible person." Thus the second aspect of the *Aguilar-Spinelli* test is likewise unfulfilled.

The Commonwealth urges that probable cause was established here because the "anonymous telephone call contained significant *inner indicia* of reliability, important details of which were corroborated by the arresting officers' own knowledge." Apparently the Commonwealth is contending that the informant was *inherently* reliable since he was an "anonymous citizen-informant" who was "too scared" to reveal his identity to the police. Such an informant, argues the Commonwealth, is more reliable than "the typical stoolie". However, the Commonwealth here engages in sheer conjecture, as it admittedly has no evidence that the unknown informant was either a "typical stoolie" or a "citizen-informant". It thus has absolutely no indication of the informant's reliability.

Next the Commonwealth contends that the tip was corroborated because the officers knew that "Primo" was a gang member and that he lived near the scene of the robbery. However, such information is certainly not sufficient independent corroboration, but simply the grossest form of unsupported speculation and guilt by association.

A similar disingenuous argument by the Commonwealth was categorically rejected by this Court in *Commonwealth v. Goslee,* supra. There the Commonwealth argued it had probable cause to arrest appellant for

sation based merely on an individual's reputation. 393 U.S. 410, 416, 89 S. Ct. 584, 589 (1969). Moreover, as appellant perceptively suggests "[i]t would not be unrealistic or even unreasonable to think that casual rumors such as the one at issue here are plentiful in the Philadelphia gang milieu, and are even a convenient way for rival gang members to satisfy a grudge."

burglary because he was a known burglar and lived near the scene of the crime. This Court held that such information at best amounted to mere suspicion. We there said that "[t]o sustain this conviction we would be forced to countenance a proposition that presence plus a prior conviction is sufficient for arrest—a proposition we cannot accept." *Commonwealth v. Goslee,* supra at 407, 234 A. 2d at 851. See *Commonwealth v. One 1958 Plymouth Sedan,* 418 Pa. 457, 211 A. 2d 536 (1965).

Thus this record reveals only an anonymous, unsubstantiated tip, knowledge that the suspect was a gang member, and that he lived near the scene of the robbery. This is clearly constitutionally insufficient to establish probable cause and the arrest was therefore illegal. *Commonwealth v. Holton,* 432 Pa. 11, 247 A. 2d 228 (1968).

The next question to be resolved is whether appellant's oral statement was so tainted by the illegal arrest as to be inadmissible. The seminal case on this issue is *Wong Sun v. United States,* 371 U.S. 471, 488, 83 S. Ct. 407, 417 (1963), where the Supreme Court announced that the relevant test is: ". . . 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'" (Citation omitted.) See *Commonwealth v. Cephas,* 447 Pa. 500, 291 A. 2d 106 (1972); *Commonwealth v. Rowe,* 445 Pa. 454, 282 A. 2d 319 (1971).

The Supreme Court also noted that the challenged evidence may be purged of the primary taint only (1) if it results from " 'an intervening independent act of a free will,'" *Wong Sun,* supra at 486, 83 S. Ct. at 416, or (2) if the connection between the arrest and the evidence (confession) has " 'become so attenuated as to

dissipate the taint.' " Id. at 491, 83 S. Ct. at 419 (citation omitted).

In *Commonwealth ex rel. Craig v. Maroney,* 348 F. 2d 22, 29 (3d Cir. 1965), cert. denied, 384 U.S. 1019, 86 S. Ct. 1966 (1966), the Third Circuit noted two specific factors of major significance in determining the relationship between an illegal arrest and subsequent confession:

"(a) the proximity of an initial illegal custodial act to the procurement of the confession; and

"(b) the intervention of other circumstances subsequent to an illegal arrest which provide a cause so unrelated to that initial illegality that the acquired evidence may not reasonably be said to have been directly derived from, and thereby tainted by, that illegal arrest."

This Court, in *Commonwealth v. Bishop,* 425 Pa. 175, 183, 228 A. 2d 661, 666, cert. denied, 389 U.S. 875, 88 S. Ct. 168 (1967), subsequently explained the *Wong Sun* test this way: "[I]f the connection between the arrest and the confession is shown to be so vague or tenuous 'as to dissipate the taint' *or* 'sufficiently an act of free will,' the confession is admissible, despite the illegality of the arrest. By 'sufficiently an act of free will,' we mean that not only was the confession truly voluntary, *but also* free of any element of coerciveness due to the unlawful arrest. The burden of proof, of course, is upon the Commonwealth." (Footnote omitted.)

It should also be noted that once the primary illegality—here the illegal arrest—is established, the burden is on the Commonwealth to establish that the confession has been come at "by means sufficiently distinguishable to be purged of the primary taint" rather than "by exploitation of that illegality." See *United States v. Wade,* 388 U.S. 218, 239-40, 87 S. Ct. 1926,

1939 (1967); *Commonwealth v. Bishop,* supra at 183, 228 A. 2d at 666.

Applying the above tests appellant's statement was clearly come at through exploitation of and tainted by the illegal arrest. As the dissenters in the Superior Court noted "the proximity between the illegal arrest and appellant's statement was extremely close—within one or two hours." *Betrand Appeal,* supra at 71, 293 A. 2d at 361. The detective in charge of the case admitted that he instructed the arresting officers to arrest appellant on the street, a place where appellant was unlikely to be in the company of a parent or other adult to advise him. Appellant was in fact arrested on a Philadelphia street and transported to detective headquarters. As previously noted appellant was immediately locked in an interrogation room in a cell block and left there alone for between one and two hours. A police detective then arrived and advised appellant of his rights by reading from the standard police interrogation card. Approximately one-half hour later, appellant admitted his involvement in the robbery.

In these circumstances where there was not a break in the chain of events, a definite causal connection between the illegal arrest and the subsequent confession obviously did exist. See *Commonwealth v. Bishop,* supra at 182, 228 A. 2d at 665.

The Commonwealth argues, however, that advising appellant of his *Miranda* rights constituted "a cause so unrelated to that initial illegality that the acquired evidence may not reasonably be said to have been directly derived from, and thereby tainted by, that illegal arrest." In essence the Commonwealth contends that although the arrest may have been illegal, advising appellant of his *Miranda* rights was an "intervening independent act" which purged appellant's subsequent alleged waiver of those rights and his confession from the taint of the illegal arrest. However, the mere perfunc-

tory recital of *Miranda* warnings to appellant is insufficient to break the chain of events leading directly from the illegal arrest to the confession. *Commonwealth v. Brown,* 451 Pa. 395, 301 A. 2d 876 (1973); see *United States v. Kilgen,* 431 F. 2d 627, 632 (5th Cir. 1970), modified on other grounds, 445 F. 2d 287 (1971). Numerous courts have held that an illegal arrest, ipso facto, is sufficient to exclude any subsequently obtained evidence as tainted fruit. *United States v. Kilgen,* supra; *Collins v. Beto,* 348 F. 2d 823, 829 (5th Cir. 1965); *Gatlin v. United States,* 326 F. 2d 666, 672 (D.C. Cir. 1963); *United States v. Ricci,* 313 F. Supp. 31, 34 (E.D. Pa. 1970); *People v. Weaver,* 35 Mich. App. 504, 192 N.W. 2d 572 (1971). Thus it is difficult to understand how the recital of *Miranda* warnings can dissipate that taint.

This Court specifically stated in *Commonwealth v. Bishop,* supra at 183, 228 A. 2d at 666, that in order for an independent act of free will to dissipate the taint not only must it be truly voluntary *"but also* free of any element of coerciveness due to the unlawful arrest." Here that "element of coerciveness" produced by the illegal arrest and an immediate two-hour incommunicado detention was not dissipated by the bare reading of *Miranda* warnings from a card.

Such a conclusion, as that urged by the Commonwealth, would lead to the anomalous and clearly impermissible result that the police could illegally arrest suspects at will knowing that by merely reciting *Miranda* warnings to those suspects they could purge any subsequent confessions of the taint of the initial illegality. As the Fifth Circuit stated: "Such a . . . [result] would practically eviscerate the prophylactic effect of the exclusionary rule. Moreover, if a mere showing that a confession during a period of unlawful detention was 'voluntary' were sufficient to establish its admissibility, Wong Sun would be an empty promise, for the

inadmissibility of 'involuntary' confessions has long been fully recognized." *Collins v. Beto,* supra at 829. Surely the *Miranda* warning, intended to deter exploitive police practices, cannot now be perverted to thwart the equally important deterrent purpose behind the exclusionary rule of *Wong Sun.*

The Commonwealth having failed to meet its burden of proving that appellant's confession was purged of the taint of the initial illegal arrest, appellant's confession was inadmissible.

The order of the Superior Court is reversed, and the matter remanded to the court of original jurisdiction for proceedings consistent with this opinion.

Mr. Chief Justice JONES and Mr. Justice EAGEN concurred in the result.

CONCURRING OPINION BY MR. JUSTICE POMEROY:

In holding that appellant's waiver of *Miranda* rights did not break the causal connection between his illegal arrest and a subsequent confession, the Court by its decision in this case appears to have joined those "courts [which] have held that an illegal arrest, ipso facto, is sufficient to exclude any subsequently obtained evidence as tainted fruit." Although the opinion indicates that the Commonwealth *may* be able to prove a confession purged of the taint of the initial arrest, the prospects of succeeding in such a task would seem to be more illusory than real.[1] With *Miranda* warnings rele-

---

[1] The Court purports to follow our previous decision in *Commonwealth v. Bishop,* 425 Pa. 175, 183, 228 A. 2d 661, 666, *cert. denied,* 389 U.S. 875 (1967), where we held: "[I]f the connection between the arrest and the confession is shown to be so vague or tenuous 'as to dissipate the taint' *or* 'sufficiently an act of free will', the confession is admissible, despite the illegality of the arrest. By 'sufficiently an act of free will,' we mean that not only was the confession truly voluntary, *but also* free of any element of coerciveness due to the unlawful arrest. The burden of proof, of course is upon the Commonwealth." (Footnote omitted.) An exam-

gated to the status of a "mere perfunctory recital", however, it is not unlikely that henceforth the *only* acceptable manner of purging the taint will be to release the suspect following his illegal arrest.[2]

If this is indeed the effect of the decision, it pays too little attention to society's justifiable interest in utilizing voluntary confessions. On the other hand, however, the opposite approach would be to me equally objectionable; that is, to admit any statement which is given following an illegal arrest so long as it is given freely and voluntarily, attended by all required warnings.[3] This would be to overlook the crucial objective

---

ination of the facts in *Bishop* makes it clear that the burden of showing dissipation of the taint was not intended to be an insurmountable one.

[2] That such a release had occurred was the determinative factor favoring admissibility of the confession of Wong Sun in *Wong Sun v. United States*, 371 U.S. 471, 9 L. Ed. 2d 441 (1963). See also *Thomas v. United States*, 377 F. 2d 118 (5th Cir. 1967).

[3] This approach appears to have been adopted in the following decisions: *United States v. Close*, 349 F. 2d 841 (4th Cir. 1965), *cert. denied*, 382 U.S. 992 (1966); *Collins v. Beto*, 348 F. 2d 823 (5th Cir. 1965) (This case is erroneously cited by the majority as authority for excluding, ispo facto, a confession following an illegal arrest. To the contrary, in announcing the opinion of the Court, Chief Judge TUTTLE, speaking for himself only, said that affording the suspect an opportunity to obtain counsel is the best and perhaps the only way to purge a confession of the taint of a prior illegal arrest); *Commonwealth ex rel. Craig v. Maroney*, 348 F. 2d 22 (3rd Cir. 1965), *aff'd*, 352 F. 2d 30 (3rd Cir. 1965), *cert. denied*, 284 U.S. 1019 (1966); *Rogers v. United States*, 330 F. 2d 535 (5th Cir. 1964), *cert. denied*, 379 U.S. 916 (1964); *Burke v. United States*, 328 F. 2d 399 (1st Cir. 1964); *State v. Jackson*, 43 N.J. 148, 203 A. 2d 1 (1964), *cert. denied*, 379 U.S. 982 (1965); *State v. Moore*, 275 N.C. 141, 166 S.E. 2d 53 (1969). For a discussion of the conflicting approaches to the treatment of confessions following illegal arrests, see generally, *Admissibility of Confessions Made Subsequent to an Illegal Arrest: Wong Sun v. United States Revisited*, 61 J. Crim. L. 207 (1970); *Voluntary Incriminating Statements Made Subsequent to an Illegal Arrest—A Proposed Modification of the Exclusionary Rule*, 71 Dick. L. Rev. 573 (1967).

of police deterrence imbedded in the exclusionary rule. A sensible and workable accommodation as between these often conflicting interests seems to me to have been achieved by the draftsmen of the American Law Institute's Model Code of Pre-Arraignment Procedure, still in process of consideration.[4] Section 9.02 of the proposed Model Code provides:

"Statements Made After An Illegal Arrest.

If a law enforcement officer, acting without a warrant, arrests a person without the reasonable cause required by Section 3.01, and the court determines that such arrest was made *without fair basis for the belief that such cause existed,* no statement made by such person after such arrest and prior to his release, unless it is made in the presence of or upon consultation with counsel, shall be admitted in evidence against such person in a criminal proceeding in which he is the defendant."[5] (Emphasis supplied.) As the commentary to this section makes clear, before a court even considers whether a "fair basis for the belief that [probable] cause existed" for the arrest, it must conclude that proper warnings were given and that the statement was otherwise free of coercion.

---

[4] American Law Institute, Tentative Draft No. 1, *A Model Code of Pre-Arraignment Procedure* (1966).

[5] Concurring in *Collins v. Beto,* 348 F. 2d 823, 835 (5th Cir. 1965), Judge FRIENDLY (of the Second Circuit, sitting by designation) suggested a test very similar to that of the ALI: "A good deal might be said for a limiting principle based on the wantonness of the arrest. . . . On this view, a flagrantly unlawful violation by the police would require depriving them of every foreseeable benefit that might spur further adventures of the same kind, certainly suppression of all evidence acquired, including confessions given prior to release or in the absence of a lawyer. On the other hand, those errors of judgment inevitable when the Fourth Amendment is being interpreted 'on the run' would not disqualify the evidence on the theory that the added margin of deterrence and increased security is not worth the added price."

Applying the test of the ALI's tentative draft of the Model Code to the facts of the instant case, while it is clear that appellant's confession was voluntary, it is equally clear that the police acted on the uncorroborated tip of an unidentified informant whose reliability was never established. In light of the countless decisions, both state and federal, interpreting the requirements of *Aguilar v. Texas*, 378 U.S. 108, 12 L. Ed. 2d 723 (1964) and *Spinelli v. United States*, 393 U.S. 410, 21 L. Ed. 2d 637 (1969) to factual situations almost identical to this one, I would hold that the police did not have a fair basis for their belief that probable cause existed to arrest appellant and that the confession must therefore be excluded.[6]

It is on the basis of this approach that I concur in the decision of the Court.

---

[6] I observe, however, that given the same facts, save for the degree of deviation from probable cause requirements (e.g., the informant was shown to be reliable and the police had some, though not sufficient, underlying circumstances to meet the *Aguilar-Spinelli* standard) a contrary result would be indicated under the ALI test.