Commonwealth *v.* Richards, Appellant.

Argued September 24, 1973. Before JONES, C. J.,
EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MAN-
DERINO, JJ.

458

*John H. Corbett, Jr.,* Assistant Public Defender, with him *John J. Dean,* Assistant Public Defender, and *George H. Ross,* Public Defender, for appellant.

*John G. Alford,* Assistant District Attorney, with him *Peter Foster* and *Robert L. Eberhardt,* Assistant District Attorneys, and *Robert W. Duggan,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE NIX, October 16, 1974:

On the night of June 28, 1971, an intruder, later identified as appellant, entered the bedroom of Marla Jean Nase, then 11 years of age, awakened her and advised her that he intended to kidnap her for ransom. The appellant's face below the nose was covered with a mask but the victim was able to describe him as a white male, of thin build, approximately 5' 10" in

height with blondish hair that was showing signs of balding. At the time of the incident, he was wearing a dark black or dark blue Barracuda jacket with dark pants. The intruder placed a knife at the throat of his young victim and forced her to a nearby yard where he blindfolded her, bound her hands and attempted to rape her. The assailant was interrupted by the screams of Marla's mother when she discovered her daughter's absence from her room.

As a result of a police canvass of the neighborhood, they received information that an individual fitting the general description resided in a room in a hotel located approximately one block from the residence of Marla. At 9:25 A.M. on July 1st, the police proceeded to the room of the appellant and he was subsequently questioned and charged with the crimes of burglary, assault with the intent to ravish, indecent assault and kidnapping.

After a trial before a jury, the appellant was convicted on all counts and following the dismissal of post-trial motions was sentenced to serve a term of imprisonment of 7 1/2 to 15 years. The appeal to the Superior Court resulted in a *per curiam* affirmance. We granted allocatur and now reverse.

The first question raised is whether or not the appellant was illegally arrested. The Commonwealth contends that the appellant voluntarily accompanied the police officers to their headquarters for investigatory purposes and was in fact not arrested until after he had been identified by the victim. We believe, however, that the following recitation of facts dispute such a conclusion. In *Commonwealth v. Bosurgi*, 411 Pa. 56, 190 A.2d 304 (1963), we defined an arrest as any act that indicates an intention to take an individual into custody and that subjects him to the actual control and will of the person making the arrest. Accepting the evidence most favorable to the Commonwealth,

the police arrived in the room of the appellant at 9:25 A.M., where after explaining that they were investigating a burglary they asked appellant to accompany them to police headquarters for questioning. While at the police station, the appellant, a diabetic, became ill and was taken to the hospital accompanied by an officer who had been instructed to stay with him. The entire time that he was in the hospital the police officials remained with him. When the medical ministrations had been completed, appellant was returned to the police station still in the company of the police officers. He was then alleged to have waived his rights of counsel at the time of a lineup and was identified as the person who committed these acts. During the time the appellant was in the police station prior to the lineup he refused to make a statement pertaining to the incident and attempted on two separate occasions to reach two attorneys without success.

When we consider the fact that the appellant merely gave his name to the police and would not participate in any further discussions either concerning the crime involved or other matters, that in fact he became ill and required medical attention, that during the stay in the hospital he was accompanied at all times by police officials, it is most difficult to conclude that he remained with the police from 9:25 A.M. until 3:15 P.M. (the time of the lineup) voluntarily. The evidence offered by the Commonwealth to support their view of a voluntary detention was addressed primarily to the state of mind of the police officers involved. However, under the *Bosurgi* test the question is the reasonable impression conveyed to the person subjected to the seizure. Here, his unwillingness to cooperate in any way with the investigation, his attempt to seek assistance of counsel, and his physical distress as a result of a diabetic condition, force us to conclude that he remained with the police for a period of approxi-

mately six hours only because he believed no other alternative was available. And equally as important, the circumstances surrounding his custody warranted such a conclusion on his part.

Unquestionably the police, when they went to his hotel room that morning, had made him the focus of their inquiry. Their purpose for being there was the fact that he fit the general description given by the victim. Before questioning, they gave him the Miranda warnings and throughout the time in question police officials were constantly assigned to be with him. Clearly, he was a suspect; clearly he was the focus of the investigation and we believe equally as apparent his freedom of movement had been restrained. In *United States ex rel. Hollman v. Rundle,* 329 F. Supp. 1052 (E.D. Pa., 1971) a robbery victim had given a description to the police of the man who had committed the act. During the course of that investigation the police stopped the accused and took him to the station, warned him of his rights and photographed him. The prosecution argued that the accused's submission to the photographing was voluntary and therefore there was no need to establish probable cause to support their right to seize him. In response to this claim the court responded: "Was there probable cause for the original apprehension of petitioner as a suspect? Although one police officer testified that petitioner was not under arrest when he was photographed at the police station, the testimony clearly reveals of the contrary. Petitioner was in actual custody of the police, as a suspect in the robbery, and he was not free to leave until after he was photographed. This detention would constitute an arrest requiring 'probable cause' on the part of the arresting officers." A review of the record forces us to conclude that there was no credible testimony to support the finding of the court below that appellant had voluntarily submitted to this investigation. A rea-

sonable interpretation of the findings most favorable to the Commonwealth demands the conclusion that Edwin Richards was arrested when the police went to his hotel room that morning.

The Commonwealth also attempts to avoid the necessity of demonstrating probable cause by urging that it was merely an investigatory detention. In *Terry v. Ohio*, 392 U.S. 1 (1968), the Supreme Court of the United States recognized the right of the law enforcement officials to conduct limited searches and seizures under carefully-defined circumstances without the need to establish probable cause. The *Terry* court, however, limited this right to those on-the-street encounters where the necessity for immediate action is obvious and the danger to the person of the officer imminent. This record is barren of the articulable facts required by the *Terry* court to permit this type of intrusion upon the personal security of an individual in absence of a showing of probable cause. In approving an investigatory stop in absence of probable cause the Supreme Court was most careful to confine it to situations where the intrusion was limited in nature and the exigencies of the moment required immediate action. "[a] brief stop of a suspicious individual, in order to determine his identity or to maintain status quo momentarily while obtaining more information may be most reasonable in light of the facts known to the officer at the time." *Adams v. Williams*, 407 U.S. 143, 146 (1972).[1] Here there was

---

[1] "But to argue that the Fourth Amendment does not apply to the investigatory stage is fundamentally to misconceive the purposes of the Fourth Amendment. Investigatory seizures would subject unlimited members of innocent persons to the harassment and ignominy incident to involuntary detention. Nothing is more clear than that the Fourth Amendment was meant to prevent wholesale intrusions upon the personal security of our citizenry, whether these intrusions be termed 'arrests' or 'investigatory deten-

no need for immediate action nor was this the limited intrusion envisoned by the *Terry* and *Adams* decisions. This court has not, nor need we now, decide, whether in Pennsylvania we will embrace the concept of an investigatory detention, and if so the nature of the panoply of rights necessary to protect a suspect during such an intrusion. Under the facts of the case *sub Judice* this would clearly be an extension of the limited exception to the probable cause requirement discussed by the Supreme Court to date.

Further, the Commonwealth argues that probable cause for an arrest did in fact exist. With this conclusion we also cannot agree. The identification given to the police by the victim was general in nature and would have applied to a large segment of the community. A description of a white male with blondish thinning hair, medium height, "real skinny", approximately 30 years of age, fails to have that conclusive quality which would necessarily draw attention to a particular individual. We are not faced here with a situation where a description is coupled with circumstances that together combine to satisfy the requirement of probable cause. The instant appellant was not apprehended at or near the scene shortly after the incident wearing the clothing described, but rather several days later. Further the fact that he did possess clothing of the type described cannot be considered for this purpose since that fact was not known at the time of the arrest. Thus, the only thing the Commonwealth can rely upon in its effort to furnish probable cause is a general description and the fact

tions.' We made this explicit only last Term in Terry v. Ohio, 392 U.S. 1, 19, 20 L.Ed2d 889, 904, 88 S. Ct. 1868 (1968), when we rejected 'the notions that the Fourth Amendment does not come into play at all as a limitation upon police conduct if the officers stop short of something called a "technical arrest" or a "full-blown search." ' " *Davis v. Mississippi*, 394 U.S. 721, 726-7 (1969).

that the individual lived in the general vicinity. In *Commonwealth v. Holton,* 432 Pa. 11, 14-15, 247 A.2d 228, 229-30 (1968) we stated: "An arrest without a warrant must be based on probable cause, i.e., there must be facts available to the officers at the moment of the arrest which 'would warrant a man of reasonable caution in the belief' that the individual arrested has committed an offense. Carroll v. United States, 267 U.S. 132, 162, 45 S. Ct. 280 (1925); McCray v. Illinois, 386 U.S. 300, 87 S. Ct. 1056 (1967). Mere suspicion is not enough and the burden is upon the Commonwealth to show with reasonable specificity facts sufficient to establish that probable cause existed. Beck v. Ohio, 379 U.S. 89, 85 S. Ct. 223 (1964)."

Having concluded that the arrest was illegal we now turn to the question as to whether or not the evidence obtained during that illegal seizure, e.g., the line-up identification, the articles of clothing that were seized and the oral incriminating statement are to be excluded as being the product of the exploitation of that illegality. In *Commonwealth v. Garvin,* 448 Pa. 258, 293 A.2d 33 (1972) relying upon the United States decision in *Wong Sun v. U. S.,* 371 U.S. 471 (1963) we noted that an illegal arrest does not necessarily taint all evidence that follows it in time. "Significantly, the Supreme Court made it clear that an illegal arrest does not bar all evidence subsequent to that arrest when it concluded: 'We need not hold that all evidence is "fruit of the poisonous tree" simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." ' " Id. at 265. This Court recently in our opinion in

*Betrand Appeal,* 451 Pa. 381, 303 A.2d 486 (1973) discussed at great length the factors to be considered in determining whether the evidence obtained following the illegal arrest was sufficiently removed from the taint of the illegality to permit its introduction into evidence against the accused.

"The seminal case on this issue is Wong Sun v. United States, 371 U.S. 471, 488, 83 S. Ct. 407, 417 (1963), where the Supreme Court announced that the relevant test is: '. . . "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." ' (Citation omitted.) See Commonwealth v. Cephas, 447 Pa. 500, 291 A.2d 106 (1972); Commonwealth v. Rowe, 445 Pa. 454, 282 A.2d 319 (1971).

The Supreme Court also noted that the challenged evidence may be purged of the primary taint only (1) if it results from ' "an intervening independent act of a free will," ' Wong Sun, supra at 486, 83 S. Ct. at 416, or (2) if the connection between the arrest and the evidence (confession) has ' "become so attenuated as to dissipate the taint." ' Id. at 491, 83 S. Ct. at 419 (citation omitted).

In *Commonwealth ex rel. Craig v. Maroney,* 348 F.2d 22, 29 (3d Cir. 1965), cert. denied, 384 U.S. 1019, 86 S. Ct. 1966 (1966), the Third Circuit noted two specific factors of major significance in determining the relationship between an illegal arrest and subsequent confession:

'(a)   the proximity of an initial illegal custodial act to the procurement of the confession; and

'(b)   the intervention of other circumstances subsequent to an illegal arrest which provide a cause so unrelated to that initial illegality that the acquired evidence may not reasonably be said to have been di-

rectly derived from, and thereby tained by, that illegal arrest.'

This Court, in *Commonwealth v. Bishop,* 425 Pa. 175, 183, 228 A.2d 661, 666, cert. denied, 389 U.S. 875, 88 S. Ct. 168 (1967), subsequently explained the *Wong Sun* test this way: '[I]f the connection between the arrest and the confession is shown to be so vague or tenuous "as to dissipate the taint" *or* "sufficiently an act of free will," the confession is admissible, despite the illegality of the arrest. By "sufficiently an act of free will," we mean that not only was the confession truly voluntary, *but also* free of any element of coerciveness due to the unlawful arrest. The burden of proof, of course, is upon the Commonwealth.' (Footnote omitted.)

It should also be noted that once the primary illegality—here the illegal arrest—is established, the burden is on the Commonwealth to establish that the confession has been come at 'by means sufficiently distinguishable to be purged of the primary taint' rather than 'by exploitation of that illegality.' See United States v. Wade, 388 U.S. 218, 239-40, 87 S. Ct. 1926, 1939 (1967); Commonwealth v. Bishop, supra at 183, 228 A.2d at 666." Id. at 388-390.

Because different factors are involved in the decision of the three pieces of evidence sought to be excluded we will discuss each separately. Turning first to the item of clothing (the blue Barracuda jacket) taken from appellant's hotel room allegedly[2] pursuant to a search warrant, it is clear that this objection has been waived. This objection was not properly raised pursuant to Pennsylvania Rule of Criminal Procedure 323 allowing for the suppression of evidence prior to trial nor was an objection made at trial when the

---

[2] There is a dispute as to whether or not a search warrant was in fact obtained.

article of clothing was offered into evidence.[3] *Commonwealth v. Agie,* 449 Pa. 187, 296 A.2d 741 (1972) and *Commonwealth v. Henderson,* 441 Pa. 255, 260, 272 A.2d 182, 185 (1971).

Focusing next upon the question of the lineup identification, we agree with the Commonwealth that even if that identification was tainted by the illegality of the arrest[4] the in-court identification of the appellant by the victim was free of that taint. We are satisfied that the Commonwealth on this record has proven by clear and convincing evidence that the in-court identification was of an independent origin. *United States v. Wade,* 388 U.S. 218 (1967); *Gilbert v. California,* 388 U.S. 263 (1967); *Commonwealth v. Hancock,* 455 Pa. 583, 317 A.2d 588 (1974); *Commonwealth v. Whiting,* 439 Pa. 205, 266 A.2d 738 (1970). The testimony established that the bedroom from which the victim was removed was lighted by a lamp on the dresser three to four feet from Marla's bed. The appellant held a knife to the throat of Marla while he stood beside the bed for a period estimated by the victim to be five minutes. The identification first given to the police corresponded to the appearance of the appellant. From the time she was taken from the bedroom until she was blindfolded in the yard, she had an additional period of time to view her assailant at close range. Combining these factors we are satisfied that the in-court identification was sufficiently removed from any taint that may have infected the lineup iden-

---

[3] There is some indication in the record that appellant, through his counsel, may have raised an objection to the search because of the Commonwealth's failure to produce the warrant, however, no request was made to suppress this evidence because of the illegal arrest.

[4] But see *Commonwealth v. Garvin,* 448 Pa. 258, 293 A.2d 33 (1972). The appellant also argued that the lineup was tainted because it was conducted in an unnecessarily suggestive manner.

tification to permit its admission. *Commonwealth v. Hancock, supra* and *Commonwealth v. Burton,* 452 Pa. 521, 307 A.2d 277 (1973). Since we are reversing the judgment of sentence and granting a new trial we need not decide whether the reference to the out-of-court identification was harmless error. See *Commonwealth v. Hancock, supra; Commonwealth v. Burton, supra.* During the retrial of the matter this problem can be obviated by avoiding reference to the lineup identification.

With reference to the incriminatory oral remarks, allegedly made during the illegal detention after the lineup, it is clear that they were the products of the exploitation of the illegality and should have been suppressed. The Commonwealth, in its brief and argument, has made no attempt, nor could they upon this record, meet their burden of showing that the confession had come about by means sufficiently distinguishable to be purged of the primary taint. In re *Betrand, supra.* For this reason the judgment of sentence must be reversed and a new trial awarded.

Lastly, we turn to appellant's contention that the evidence was insufficient to support a verdict of guilt on the indictment charging kidnapping. The Act of June 24, 1939, P. L. 872, §723, 18 P.S. §4723 provides: "Whoever takes, or carries away or decoys or entices away, or secretes any person, *with intent to extort money* or any other valuable thing for the restoration or return of such person, . . ." (Emphasis added). The appellant argues that the Commonwealth's evidence of the requisite state of mind was contradicted by its own testimony. They contend that appellant's announced intention to kidnap, initially upon arousing the victim, was negated by his subsequent acts in that he took her to a yard for the obvious purpose of making sexual advances and fled upon hearing the mother's screams. We do not accept appellant's underlying

premise that the intent to assault one's victim is necessarily incompatible with an intent to also hold as a hostage for the purpose of seeking a ransom for her return. The jury very properly could find from the testimony that appellant forced Marla from her bed motivated by an intention to sexually abuse her and also to demand money for her return, the latter intent being abandoned when appellant heard the screams of the mother and feared detection. This was properly a question to be decided by the trier of fact.

Judgment of sentence reversed and a new trial awarded.

Mr. Chief Justice JONES dissents.

Mr. Justice EAGEN dissents.

---

DISSENTING OPINION BY MR. JUSTICE POMEROY:

I have serious question as to the soundness of the conclusion reached by the Court that Richards' arrest was illegal for want of probable cause. See *Commonwealth v. Gilmore*, 447 Pa. 21, 288 A.2d 757 (1972); *Commonwealth v. Bosurgi*, 411 Pa. 56, 68-69, 190 A.2d 304 (1963).[1] Accepting, however, that such cause was lacking, Richards' inculpatory statements, voluntarily made following *Miranda* warnings and a waiver of

---

[1] In the case at bar, the victim had ample opportunity to observe her assailant, and gave a detailed description of him to the police. Moreover, as the Commonwealth points out in its brief, "[a]n additional factor in determining probable cause in the instant case is the fact that the accused was discovered living in the neighborhood where the crime took place. While this would not be a significant factor in a well-planned burglary or a crime of a 'professional' nature, it is of obvious significance in a sex offense crime. The investigating officers . . . recognized this significance when they centered their investigation on persons living in the immediate vicinity of the crime." Brief for Appellee at 15-16. I think this point is well-taken, and accordingly attach little significance to the fact that the arrest was not made until three days after the assault on Ms. Nase was reported.

his *Miranda* rights, should not, in my view, be excluded from evidence unless the police made the arrest "without fair basis for the belief that such cause existed." American Law Institute, Model Code of Pre-Arraignment Procedure, §150.2(2) (Tent. Draft No. 6, 1974); see *Betrand Appeal,* 451 Pa. 381, 392, 303 A.2d 486, 492 (1973) (concurring opinion of this writer). Under the facts of the case at bar, I cannot conclude that the police acted without a fair basis for their belief that they had reasonable cause for arrest. I therefore dissent.