389 A.2d 74

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**David STOKES, Appellee (two cases).**

Supreme Court of Pennsylvania.

Argued April 14, 1978.

Decided July 14, 1978.

---

40

Edward G. Rendell, Dist. Atty., Steven H. Goldblatt, Deputy Dist. Atty. for Law, Gaile McLauglin Barthold, Asst. Dist. Atty., for appellant.

Robert B. Mozenter, Philadelphia, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

EAGEN, Chief Justice.

These appeals [1] were entered by the Commonwealth [2] from an order of the Court of Common Pleas of Philadelphia granting defendant David Stokes' motion to suppress certain incriminatory statements given to the police following his arrest. The court below ordered suppression of Stokes' statements on the basis that this evidence was the product of an illegal arrest. We agree and, accordingly, affirm the order.

The charges against Stokes arose out of the robbery and fatal shooting of John J. Meehan at 1133 N. 63rd Street, Philadelphia, on July 1, 1976.

On August 14, 1976, Detective Terrence Gibbs was assigned primary responsibility for investigating Meehan's death. That same day Detective Gibbs stopped a youth named Gregory Staulings on a street corner to ask if he knew anything about the Meehan Killing. Staulings told Detective Gibbs that he had been told by another youth, one Anthony Ramsey, that David Stokes had told Ramsey that "he and some other guys had got a body up on 63rd Street." Subsequently, Staulings gave a written statement at homicide headquarters.

**1.** An appeal relating to homicide charges was filed in this Court. An appeal relating to the other charges was filed in the Superior Court and certified here. See Appellate Court Jurisdiction Act, Act of July 31, 1970, P.L. 673, No. 223, Art. II, § 202, 17 P.S. § 211.202(1) and Art. V, § 503, 17 P.S. § 211.503(c).

**2.** The Commonwealth may appeal from a pretrial ruling where the practical effect of such a ruling is to terminate the prosecution and where it appears that a pretrial order suppressing evidence will substantially impair the prosecution of the case because the Commonwealth may not present all of its available evidence. *Commonwealth v. Barnett*, 471 Pa. 34, 369 A.2d 1180 (1977).

On August 15, 1976, Detective Gibbs dispatched Sergeant Richard Strohm to question seventeen-year-old Anthony Ramsey about the Meehan killing. At about 5:00 p. m., in the presence of his mother at their home, Ramsey confirmed Staulings' information and added that Stokes had told him "they had shot the white man on 63rd Street when they were out to rob somebody and that the man died." Further, Ramsey said that Stokes had asked him not to tell anyone. Ramsey and his mother were taken to police headquarters where Ramsey gave a statement which was signed by Ramsey and his mother.

Solely on the basis of the information provided by Gregory Staulings and Anthony Ramsey, Detective Strohm concluded there was probable cause to arrest Stokes.[3] At 5:10 p. m., he radioed Detective Gibbs to make the arrest. At 5:15 p. m., Detective Gibbs and Officer Barlow went to Stokes' residence where they arrested him without a warrant in the presence of his father and sister and, thereafter, transported him to homicide headquarters. Stokes' subsequent oral and written statements admitting participation in the crime were ordered suppressed as the product of an illegal arrest.[4]

 The law is clear that a warrantless arrest is not lawful unless there is probable cause therefor. *McCray v. Illinois*, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967); *Ker v. California*, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); *Commonwealth v. Johnson*, 467 Pa. 146, 354 A.2d 886 (1976). Whether there is probable cause to arrest without a warrant depends on whether, at the moment a suspect is taken into custody, the facts and circumstances within the officer's knowledge, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution to believe that an offense has been committed and that the person to be arrested has committed the offense. *Commonwealth v. Johnson*, supra; *Common-*

---

3. None of the police involved in investigating the Meehan killing had any information other than that provided by Staulings and Ramsey.

4. The suppression court made no determination as to the voluntariness of Stokes' statement.

*wealth v. Jones,* 457 Pa. 423, 322 A.2d 119 (1974); *Commonwealth v. Mackie,* 456 Pa. 372, 320 A.2d 842 (1974); *Commonwealth v. Norwood,* 456 Pa. 330, 319 A.2d 908 (1974).

■ Thus, in order to arrest without a warrant, the officer must have a reasonable belief in the probability of criminal activity by the person to be arrested. However, that belief need not be grounded in the officer's direct, personal knowledge of the relevant facts and circumstances. It may, instead, rest solely on information supplied by another person where there is a "substantial basis" for crediting that information. *United States v. Harris,* 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); *Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959).

■ This Court has held that information provided by certain classes of persons may be sufficient to establish probable cause. It is well-settled that the uncorroborated confession of an accomplice which implicates the suspect will supply the probable cause for a warrantless arrest. *Commonwealth v. Johnson,* 467 Pa. 146, 354 A.2d 886 (1976); *Commonwealth v. Rush,* 459 Pa. 23, 326 A.2d 340 (1974); *Commonwealth v. Kenney,* 449 Pa. 562, 297 A.2d 794 (1972); *Commonwealth v. Bradley,* 449 Pa. 19, 295 A.2d 842 (1972). See also *Commonwealth v. Matthews,* 446 Pa. 65, 285 A.2d 510 (1971). Similarly, the statement of a victim, identifying the perpetrator of a crime, has been found sufficient to establish probable cause for that person's arrest. *Commonwealth v. Hall,* 456 Pa. 243, 317 A.2d 891 (1974). Further, information provided by an eyewitness whose identity is known has also been deemed sufficient. *Commonwealth v. Carter,* 444 Pa. 405, 282 A.2d 375 (1971); *Commonwealth v. Crawley,* 209 Pa.Super. 70, 223 A.2d 885 (1966). Cf. *Commonwealth v. Mamon,* 449 Pa. 249, 297 A.2d 471 (1972). Thus, in determining whether probable cause exists, we have tended to credit information supplied by one who has some direct personal knowledge of the crime.

In the instant case, the arresting officer relied on information supplied by an informant who was neither an accomplice, nor an eyewitness, nor a victim of the crime. The information provided by Ramsey amounted to hearsay by one who had no first-hand knowledge of the crime.

It is well-settled that even hearsay information is sometimes sufficient to establish probable cause. See *Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). However, before an officer may conclude there is probable cause to arrest based on hearsay information, he must satisfy the two-pronged test of *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), as explicated in *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969): (1) he must know the underlying circumstances from which the informer concluded the suspect participated in the crime; and, (2) he must have some reasonable basis for concluding that the informant is credible or that his information is reliable. See also *Commonwealth v. Brooks*, 468 Pa. 547, 364 A.2d 652 (1976). The *Aguilar-Spinelli* requirements are exacted in order "to assure that the tip is not merely an unsupported rumor" and "to reduce the possibility that [it] is merely a well-constructed fabrication." *In re Betrand*, 451 Pa. 381, 386, 303 A.2d 486, 488 (1973).

The court below applied the *Aguilar-Spinelli* standard to the facts of this case and concluded there was insufficient evidence to establish fulfillment of the requirements of that test. We agree.

There is no indication in the record that Ramsey had any personal knowledge of the crime. Ramsey told Detective Gibbs that Stokes had admitted his participation to him. However, the story was conclusory and contained no detailed description of Stokes' criminal activity. Moreover, the record is silent as to the circumstances under which Stokes' admission was made and as to Ramsey's relationship with Stokes which might have explained why Stokes would have divulged such self-incriminating information to him. But,

even assuming that the first requirement of the *Aguilar-Spinelli* test was met, the record is clearly deficient in regard to the requirements of the second prong of that test.

The record is devoid of evidence which could justify a reasonable belief that Ramsey himself was a credible person. Ramsey was not previously known to Sergeant Strohm or Detective Gibbs, and he had never before given information to the police. He did not come forward to report the crime as a disinterested citizen complainant, but, rather, he was sought out by the police more than six weeks after the crime to corroborate a story he had told to Gregory Staulings. Under these circumstances we cannot assume that he had no reason to falsify information or mislead the police.

Further, the record fails to include facts to support a reasonable belief that Ramsey's information was reliable. Detective Strohm testified on direct examination that he asked Ramsey "what knowledge he had of the white man that was shot and killed on N. 63rd Street back in July, namely July 1st." Ramsey responded that "David Stokes had told him that they had shot the white man on 63rd Street when they were out to rob somebody and that the man died." Thus, the question posed by Detective Strohm partially suggested the answer which Ramsey gave. Therefore, the information cannot be considered reliable on the basis that it independently corroborated information already possessed by the police.

Accordingly, the second *Aguilar-Spinelli* requirement, viz., the credibility of the informant or the reliability of his information, was not met.

The Commonwealth contends the suppression court should not have applied the *Aguilar-Spinelli* standard in determining whether Detective Gibbs had probable cause to arrest Stokes. It argues, instead, the court should have used a "substantial basis" approach. See *United States v. Harris*, supra. Regardless of which methodology is employed, the object of a probable-cause analysis remains the same, viz., to

determine if the informant was trustworthy or his information reliable.

Using the proposed alternative approach, the Commonwealth maintains that Detective Gibbs had a substantial basis for crediting Ramsey's information for the following reasons: (1) the informant was named and thus, amenable to process; (2) the information amounted to an admission by Stokes which would be admissible evidence and legally sufficient to convict, *a fortiori* the information was sufficient to establish probable cause; (3) the information was corroborated by the fact that Ramsey had told the same story to another named individual, Gregory Staulings. We have examined these reasons and conclude that they do not justify a finding of probable cause.

First, the fact that an informant is named is a factor to consider in determining whether probable cause exists, but that fact alone will not support a finding of probable cause. *United States v. Spach*, 518 F.2d 866 (7th Cir. 1975). While the federal courts have upheld findings of probable cause to arrest based on information by named persons, they have insisted upon corroborative evidence to support the information. *United States v. Spach*, supra; *United States v. Wilson*, 479 F.2d 936 (7th Cir. 1973); *United States v. Unger*, 469 F.2d 1283 (7th Cir. 1972), cert. denied, 411 U.S. 920, 93 S.Ct. 1546, 36 L.Ed.2d 313 (1973); *United States v. Roman*, 451 F.2d 579 (4th Cir. 1971). See also *Commonwealth v. Whitehouse*, 222 Pa.Super. 127, 292 A.2d 469 (1972).

Next, the Commonwealth reasons that since an admission would be legally sufficient to convict, it should, therefore, be sufficient to establish probable cause to arrest, since probable cause may be established by less evidence than would be sufficient to support a conviction. See *Commonwealth v. Bradley*, 449 Pa. 19, 295 A.2d 842 (1972). We acknowledge that an admission per se is inherently reliable evidence. However, an admission transmitted through an informant is only as reliable as its conduit is trustworthy.

Since the Commonwealth has not established the reliability of the source of its information, Stokes' purported admission cannot serve as the basis for probable cause to arrest him.

Finally, the fact that Ramsey told the same story to the police that he had told earlier to Gregory Staulings cannot be considered as corroboration. When two independent informants supply the same information about a crime to the police, each source tends to support the reliability of the other. See *Commonwealth v. Mamon*, supra. In this case, however, the information came from only one source, Anthony Ramsey. The fact that Ramsey related the story to someone other than the police does not increase its reliability.

Order affirmed.

MANDERINO, J., did not participate in the consideration or decision of this case.

POMEROY and LARSEN, JJ., file dissenting opinions.

POMEROY, Justice, dissenting.

I agree that appellant's arrest was premature and that at the time the police lacked sufficient reliable information to establish probable cause for a warrantless arrest. In my view, however, this fact alone is not decisive as to whether appellant's inculpatory statement must be suppressed. Hence this dissent.

It is true, of course, that courts have a duty to deter police activity which is in violation of a defendant's Fourth Amendment rights and it is also true that occasionally the promulgation of an exclusionary rule is the only effective means to curb illegal police activity. Equally important, however, is the societal interest in seeking to detect, prevent and punish criminal activity through the use of confessions which are voluntarily and intelligently made. As I noted in the case of *Betrand Appeal*, 451 Pa. 381, 394, 303 A.2d 486, 492 (1973) (concurring opinion of Pomeroy, J.):

"A sensible and workable accommodation as between these often conflicting interests seems to me to have been

achieved by the draftsmen of the American Law Institute's Model Code of Pre-Arraignment Procedure, still in process of consideration. Section 9.02 of the proposed Model Code provides:

Statements Made After an Illegal Arrest.

If a law enforcement officer, acting without a warrant, arrests a person without the reasonable cause required by Section 3.01, and the court determines that such arrest was made *without fair basis for the belief that such cause existed*, no statement made by such person after such arrest and prior to his release, unless it is made in the presence of or upon consultation with counsel, shall be admitted in evidence against such person in a criminal proceeding in which he is the defendant. (Emphasis supplied). As the commentary to this section makes clear, before a court even considers whether a 'fair basis for the belief that [probable] cause existed' for the arrest, it must conclude that proper warnings were given and that the statement was otherwise free of coercion." (Footnotes omitted.)

Applying the Model Code's approach to the facts of this case, it would be my view that the police did in fact have a fair basis for concluding that probable cause existed to arrest the appellant on a charge of murder and that therefore the confession, assuming it to be voluntary, should be admissible against appellant in his subsequent trial. *See Commonwealth v. Richards*, 458 Pa. 455, 469, 327 A.2d 63, 69 (1974) (dissenting opinion of Pomeroy, J.). Thus I think the proper disposition of this case is to reverse the order of the trial court ordering suppression of the statement and remand the case to that court for a determination as to the voluntariness of the statement. If voluntariness is found, the judgment of sentence should be affirmed.

LARSEN, Justice, dissenting.

I dissent. Evidence which is sufficient to convict a defendant ought to be sufficient to form the basis for probable cause to arrest the defendant.