COMMONWEALTH of Pennsylvania, Appellee

v.

**Kevin E. GEORGE, Appellant.**

Superior Court of Pennsylvania.

Argued Feb. 1, 2005.

Filed June 27, 2005.

John P. Cotter, Philadelphia, for appellant.

Hugh J. Burns, Jr., Assistant District Attorney, Philadelphia, and Tyler Brody, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before: KLEIN, McCAFFERY and BECK, JJ.

OPINION BY BECK, J.:

¶ 1 After a bench trial, appellant Kevin George was found guilty of violating 18 Pa.C.S.A. § 4116(d) (related to trafficking in unauthorized copies of recorded devices) and 18 Pa.C.S.A. § 4119 (related to trafficking in items bearing counterfeit marks).

—Suppression—

¶ 2 Appellant first argues that the trial court erred in not suppressing the videotapes recovered from a sales table appellant had set up on a public street.

Appellant claims that the police did not have probable cause to arrest him; therefore the evidence they seized pursuant to the illegal arrest must be suppressed.

¶ 3 Our inquiry in reviewing a suppression court's ruling is "whether the factual findings are supported by the record and the legal conclusions drawn therefrom are correct." *Commonwealth v. Johonoson,* 844 A.2d 556, 560 (Pa.Super.2004). "Our scope of review is limited; we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole." *Commonwealth v. Stevenson,* 832 A.2d 1123, 1126 (Pa.Super.2003). We adhere to the facts found by the suppression court and rely on its determinations of credibility so long as the record supports its findings. *Johonoson,* 844 A.2d at 560. The appellate standard of review for the suppression court's legal conclusions, however, is *de novo. Id.*

¶ 4 In the instant case, the prosecution's evidence and the uncontradicted defense evidence in the record reveal the following series of events leading up to appellant's arrest. William Mock and Connell McGowen are two field investigators in the employ of the Motion Picture Association of America ("MPAA"). Mock was certified at the suppression hearing as an expert in the identification of videotapes in counterfeit packaging that are unauthorized copies of intellectual property. He testified that he and McGowen surveilled appellant as he was selling videotapes from a table erected on a public sidewalk. McGowen also talked with appellant for a time. The MPAA field investigators suspected that appellant was trafficking in unauthorized videotapes bearing counterfeit marks.

¶ 5 The two went to a nearby police station to report appellant's activities. After speaking to the MPAA investigators,

Officer Livewell joined them at the location where appellant was selling the videotapes. At first, Officer Livewell watched as McGowen and Mock continued their investigation.

¶ 6 Mock testified that he looked closely at appellant's video wares. He noticed that the videotapes for sale bore many of the earmarks of counterfeit packaging and unauthorized copying, including blurry printing on their cases, low-quality cardboard boxes, bogus trademarked studio logos and titles of motion pictures that were currently playing in theatres, and therefore not yet authorized for video release. Mock signaled the police officer to arrest appellant.

¶ 7 Officer Livewell testified that he approached the table, observed the videotapes and immediately placed appellant under arrest. He testified that he was aware of the characteristics of counterfeiting and unauthorized copying from his conversation with the MPAA agents and generally from three previous arrests he had made for unauthorized or counterfeit video sales. The officer seized one hundred twenty-four videotapes from the sales table. Mock later screened a selection of ten of the one hundred twenty-four tapes that appeared from their packaging to be counterfeit, and determined in his expert opinion that all of the videotapes were unauthorized copies. Appellant argues that the evidence should have been excluded "because the officer did not have probable cause to arrest ...." Appellant's Brief at 2.

¶ 8 Both the Pennsylvania and Federal Constitutions prohibit unreasonable searches and seizures. U.S. CONST. amend. IV; PA. CONST. art. I, § 8; *see Stevenson,* 832 A.2d at 1127. An officer's warrantless arrest of a suspect, to be lawful, must be supported under the totality of the circumstances by "probable cause to

believe that (1) a felony has been committed; and (2) the person to be arrested is the felon." *Commonwealth v. Thompson,* 778 A.2d 1215, 1221–22 (Pa.Super.2001). Probable cause typically exists "[w]here the facts and circumstances within a police officer's knowledge would warrant a person of reasonable caution to believe that an offense has been committed." *In re C.C.J.,* 799 A.2d 116, 121 (Pa.Super.2002) (citations omitted). It is not necessary, however, for the officer to have direct, personal knowledge of the relevant facts and circumstances. *Commonwealth v. Walker,* 348 Pa.Super. 207, 501 A.2d 1143, 1148 (1985).

¶ 9 Information provided by an informant may legitimately form the basis for probable cause where, for example, "police independently corroborate the tip." *Commonwealth v. Luv,* 557 Pa. 570, 576, 735 A.2d 87, 90 (1999). The same is true where the informant is a victim or eyewitness whose identity is known. *Commonwealth v. Stokes,* 480 Pa. 38, 44, 389 A.2d 74, 77 (1978). Indeed, "[i]dentified citizens who report their observations of criminal activity to police are assumed to be trustworthy, in the absence of special circumstances." *Commonwealth v. Collazo,* 692 A.2d 1116, 1118 (Pa.Super.1997) (quotation omitted).

¶ 10 In this case, appellant was charged with, *inter alia,* a felony under 18 Pa. C.S.A. § 4119, "Trademark counterfeiting." Section 4119(a) makes it unlawful for any person knowingly to display, offer for sale, sell or possess with intent to sell or distribute "any items or services bearing or identified by a counterfeit mark." The crime is graded as a third-degree felony if it involves greater than one hundred but fewer than one thousand items bearing a counterfeit mark. § 4119(c)(2)(ii). Counterfeit marks include "[a]ny unauthorized reproduction or copy

of intellectual property ... [and] [i]ntellectual property affixed to any item knowingly sold, offered for sale, manufactured or distributed ... without the authority of the owner of the intellectual property." § 4119(i). "Intellectual property" is defined as "[a]ny trademark, service mark, trade name, label, term, device, design or word adopted or used by a person to identify that person's goods or services." *Id.*

¶ 11 Officer Livewell based his arrest of appellant largely on the information provided by the MPAA field investigators, who were reliable, knowledgeable, identified citizens, and were eyewitnesses to appellant's crime. As such, the court found them trustworthy.[1] *See Collazo,* 692 A.2d at 1118; *Stokes,* 480 Pa. at 44, 389 A.2d at 77. More importantly, Officer Livewell himself observed the videotapes on the table before he arrested appellant, thereby independently verifying the experts' conclusions. *See Luv,* 557 Pa. at 576, 735 A.2d at 90.

¶ 12 The evidence at the suppression hearing showed that appellant was selling videotapes packaged in low-quality cardboard with blurry printing. The packaging bore bogus trademarked studio logos. Also, some of the titles were of movies that were still in theaters. We agree that these facts and circumstances, known to the officer at the time of the arrest, would lead a reasonable person to believe that a crime was being committed. The officer had probable cause to arrest appellant for the felony of trademark counterfeiting. *See C.C.J.,* 799 A.2d at 121; 18 Pa.C.S.A. § 4119. As such, the trial court did not

err when it denied appellant's motion to suppress.[2]

—Sufficiency—

¶ 13 Appellant's second issue concerns the sufficiency of the evidence used to convict him. Evidence is sufficient to support a conviction where, viewing all of it in the light most favorable to the Commonwealth as the verdict winner, the Commonwealth has introduced evidence so that the fact-finder could conclude that every element of the crime charged could be found beyond a reasonable doubt. *Commonwealth v. Dailey,* 828 A.2d 356, 358 (Pa.Super.2003). It is the role of the fact-finder to determine whether the evidence is believable in whole, in part, or not at all, and to assign weight to the evidence that it believes as it deems appropriate. *Commonwealth v. Wright,* 722 A.2d 157, 161 (Pa.Super.1998). An appellate court should interfere with the trial court's findings from the evidence in a non-jury trial only if "the evidence is so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances." *Id.* (quotations omitted).

¶ 14 Appellant's sufficiency argument is twofold. First, as to section 4119, relating to trademark counterfeiting, he submits that the trial court found that appellant possessed only ten items with a counterfeit mark. Appellant argues that the conviction for trademark counterfeiting required him to have possessed greater than twenty-five items. In support of his position, appellant relies on subsection (b) of Section 4119, which reads: "Presumption.—A person having possession, custo-

1. The MPAA investigators were experts trained in recognizing counterfeit marks. They had ample opportunity to study the videotape packaging.

2. Since the arrest for trademark counterfeiting under section 4119 was justified by probable cause, we need not consider whether police had probable cause to arrest for the misdemeanor charge under section 4116, trafficking in unauthorized copies of recorded devices.

dy, or control of more than [twenty-five] items bearing a counterfeit mark may be presumed to possess said items with intent to sell or distribute." This statutory language can not be construed to require the possession of at least twenty-five items in order to be convicted of trademark counterfeiting.

¶ 15 The statute only requires that that the trademark counterfeiter display, offer for sale, sell or possess the merchandise with intent to sell. § 4119(a). Under Section 4119(b), there is a presumption that the Commonwealth has established the element of intent to sell where more than twenty-five items in violation of the statute are possessed. A presumption, however, is not an element of the crime. Assuming *arguendo* that appellant is correct that the court concluded he possessed only ten items bearing counterfeit marks, the Commonwealth has met its burden to show intent to sell without benefit of the presumption. *See id.* Viewed in the light most favorable to the Commonwealth, the fact that appellant had the videos bearing counterfeit marks set up on a vending table on a public street is sufficient evidence to show beyond a reasonable doubt that appellant intended to sell them.[3] *See Dailey*, 828 A.2d at 358.

¶ 16 Appellant also complains that the Commonwealth failed to introduce sufficient evidence to prove intent, *i.e.*, that appellant knew that the videotapes he was selling bore counterfeit marks and were unauthorized copies. This contention is without merit, because evidence produced by the Commonwealth permitted the fact finder to conclude beyond a reasonable

doubt that appellant had the requisite mental state for each of his convictions.

¶ 17 The intent as to violation of counterfeiting under section 4119 can be inferred from the facts that the videos were in low quality cardboard boxes; the printing on the boxes was blurry; and the titles offered for sale were of movies still showing in theatres.

¶ 18 The intent as to violation of section 4116, trafficking in unauthorized copies of recorded devices, can be inferred from the same facts. In addition, Mock testified that the selection of videos he screened were of poor quality; the pictures were blurry; human figures suddenly stood up in front of the image of the movie (which occurs when someone has brought a video camera into a movie theatre and recorded the film from his or her seat); and/or a notation on the screen throughout the movie stated "if you're watching this film call 1–800 No Copies." N.T. 3/9/2000 at 53–55.

¶ 19 It is clear that the Commonwealth presented sufficient evidence from which the trier of fact could infer intent.

¶ 20 Judgment of sentence affirmed.

---

3. In any case, appellant either misunderstands, or intentionally misconstrues, the findings of the trial court regarding the number of videotapes bearing counterfeit marks that appellant was offering for sale. The trial transcript reflects the court's finding that appellant possessed with intent to sell or was offering for sale greater than one hundred items bearing counterfeit marks for purposes of section 4119. It is for appellant's conviction under section 4116, sale of unauthorized copies of recorded devices, that the court concluded appellant possessed only ten items in violation of the statute.