J-A03042-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| STEVEN SMALLS | |
| Appellant | No. 92 EDA 2015 |

Appeal from the Judgment of Sentence December 9, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0009550-2014

BEFORE:  GANTMAN, P.J., MUNDY, J., and DUBOW, J.

MEMORANDUM BY GANTMAN, P.J.:                    **FILED APRIL 11, 2016**

Appellant, Steven Smalls, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his convictions of selling unauthorized copies of recorded devices and trademark counterfeiting.[1]  We affirm the conviction of selling unauthorized copies of recorded devices, reverse the conviction of trademark counterfeiting, vacate Appellant's judgment of sentence, and remand for resentencing.

The relevant facts and procedural history of this case are as follows. While pulling his car into the parking lot of the 777 Market convenience store on August 11, 2014, Sergeant Michael Weber observed Appellant selling what appeared to be books from a folding table.  After parking, Sgt. Weber

_____

[1] 18 Pa.C.S.A. §§ 4116(d) and 4119(a)(3), respectively.

exited his vehicle to get a closer look at Appellant's table. Meanwhile, Appellant walked away from his table and entered the 777 Market. Sgt. Weber's visual inspection of Appellant's table revealed that books held down two blankets covering the table. Sgt. Weber could also see, through a gap between the two blankets, cellophane cases which contained DVDs with homemade titles. Based on Sgt. Weber's training and experience, he determined the items were counterfeit. Sgt. Weber proceeded to move the blankets aside and collect the counterfeit items. While Sgt. Weber collected the items, Appellant returned to the table and said, "I'm just trying to make a buck. Can I just get my stuff and go?" At that point, Sgt. Weber recalled he had arrested Appellant previously at that location for selling counterfeit items. Sgt. Weber confiscated one hundred and seventy-nine (179) counterfeit movie titles, seventy-six (76) music titles, and one battery-operated DVD player. Sgt. Weber subsequently placed Appellant under arrest.

On August 28, 2014, the Commonwealth charged Appellant with selling unauthorized copies of recorded devices and trademark counterfeiting. Appellant filed an omnibus pre-trial motion on September 17, 2014, in which he argued the court should suppress the items seized because Sgt. Weber lacked probable cause to search Appellant's table outside the 777 Market. The court held a suppression hearing on December 9, 2014, where Sgt. Weber testified to his observations on the day of

Appellant's arrest. Following the hearing, the court denied Appellant's motion. Appellant immediately proceeded to a stipulated bench trial.

At Appellant's trial, the court incorporated the testimony from the suppression hearing and heard the stipulated testimony of Motion Picture Association of America ("MPAA") expert, Bill Mock, who testified that: (1) he examined the confiscated DVDs and determined they were counterfeit/pirated; (2) he knew the DVDs were counterfeit/pirated because the movies were still in theaters, and the MPAA does not release movies on DVD until the movies are no longer in theaters; (3) he further determined the DVDs were counterfeit/pirated because they all had a purplish back indicative of recordable DVDs, and the MPAA does not release DVDs on recordable DVDs; (4) the ten DVDs he viewed had poor quality pictures and sound, which also indicated the counterfeit/pirated status of the DVDs; (5) the DVDs did not contain the true name or address of the manufacturer or display company logos or trademarks; (6) the amount of lost revenue for the sale of the DVDs was $11.00 per title or $1936.00 total; and (7) based on the number of DVDs confiscated from Appellant, the DVDs were most likely offered for sale and not for personal use. The court subsequently convicted Appellant of selling unauthorized copies of recorded devices and trademark counterfeiting and sentenced Appellant to consecutive terms of one (1) year probation for each offense. Appellant timely filed a notice of appeal on January 6, 2015. On February 20, 2015, the court ordered Appellant to file

a statement of errors complained of on appeal pursuant to Pa.R.A.P.

1925(b), and Appellant timely complied on March 10, 2015.

Appellant raises the following issues for our review:[2]

> DID NOT THE [TRIAL] COURT ERR AND ABUSE ITS
> DISCRETION BY DENYING A MOTION TO SUPPRESS
> PHYSICAL EVIDENCE WHERE THE POLICE SEARCHED
> [APPELLANT'S] VENDOR STAND WITHOUT PROBABLE
> CAUSE OR A WARRANT BY LIFTING UP BOOKS AND
> CLOTHS AND UNCOVERING DVDS THAT WERE OUT OF
> VIEW UNDERNEATH?
>
> DO NOT INSUFFICIENCY OF THE EVIDENCE AND DUE
> PROCESS REQUIRE A REVERSAL OF THE FELONY OF THE
> THIRD DEGREE CONVICTION FOR COPYING; RECORDING
> DEVICES, [18 PA.C.S.A. § 4116], AS THE PROPER
> GRADATION WAS A MISDEMEANOR OF THE FIRST DEGREE
> BECAUSE (I) THERE WAS NO PROOF THAT "AT LEAST 100"
> DVDS HAD MOVIES RECORDED ON THEM WHERE THE
> COMMONWEALTH WITNESS ONLY WATCHED 10 DVDS;
> AND (II) THERE WAS NO EVIDENCE THAT THE 10 VIEWED
> DVDS WERE REPRESENTATIVE OF AT LEAST 100 DVDS,
> AND ANY POST HOC EXTRAPOLATION WOULD ALSO
> VIOLATE THE BEST EVIDENCE RULE, [PA.R.E. 1002]?
>
> DO NOT INSUFFICIENCY OF THE EVIDENCE AND DUE
> PROCESS REQUIRE A REVERSAL OF THE CONVICTION FOR
> TRADEMARK COUNTERFEITING, [18 PA.C.S.A. § 4119], AS
> AMENDED AND NARROWED BY ACT 74 OF 2010, BECAUSE
> THE CONFISCATED DVDS BORE ONLY HOMEMADE MOVIE
> TITLES AND NO COMPANY LOGOS OR TRADEMARKS AND
> THERE WAS NO EVIDENCE (I) THAT ANY MARK WAS
> "REGISTERED"; (II) THAT ANY "REGISTERED" MARK WAS
> "IN USE"; OR (III) THAT THE DVDS BORE A MARK
> "IDENTICAL WITH OR SUBSTANTIALLY
> INDISTINGUISHABLE FROM" A REGISTERED MARK?

(Appellant's Brief at 3-4).

_____

[2] For purposes of disposition, we have reordered Appellant's issues.

Our standard of review of the denial of a motion to suppress evidence is as follows:

> [An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where…the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on [the] appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the [trial court are] subject to plenary review.

**_Commonwealth v. Hoppert_**, 39 A.3d 358, 361-62 (Pa.Super. 2012), _appeal denied_, 618 Pa. 684, 57 A.3d 68 (2012).

"The Fourth Amendment of the United States Constitution and Article I, Section [8] of the Pennsylvania Constitution guarantee individuals freedom from unreasonable searches and seizures." **_Commonwealth v. El_**, 933 A.2d 657, 660 (Pa.Super. 2007). "A warrantless search or seizure is presumptively unreasonable under the Fourth Amendment and Article I, § 8, subject to a few specifically established, well-delineated exceptions." **_Commonwealth v. McCree_**, 592 Pa. 238, 247, 924 A.2d 621, 627 (2007). "The 'plain view' doctrine is often considered an exception to the general rule

that warrantless searches are presumptively unreasonable…." ***Id.*** (quoting ***Horton v. California***, 496 U.S. 128, 133, 110 S.Ct. 2301, 2306, 110 L.Ed.2d 112, ___ (1990)).  The plain view doctrine permits the "warrantless seizure of an object when: (1) an officer views the object from a lawful vantage point; (2) it is immediately apparent to him that the object is incriminating; and (3) the officer has a lawful right of access to the object." ***Commonwealth v. Miller***, 56 A.3d 424, 429 (Pa.Super. 2012).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Sierra Thomas Street, we conclude Appellant's first issue on appeal merits no relief. The trial court opinion comprehensively discusses and properly disposes of the question presented.  (***See*** Trial Court Opinion, filed April 16, 2015, at 11-14) (finding: Appellant lacked reasonable expectation of privacy in table open to public for commercial use; moreover, Sgt. Weber testified credibly that he could see cellophane cases with DVDs on Appellant's table under blankets because of gap between blankets covering tabletop; based on his experience, Sgt. Weber recognized items under blanket were counterfeit; equipped with reasonable suspicion that crime was occurring, Sgt. Weber moved blankets and discovered numerous DVDs and CDs; DVDs discovered under blanket were in cases consistent with counterfeit titles, did not look professionally generated, and all titles were still in theaters; Sgt. Weber properly seized counterfeit items under plain view doctrine because Sgt.

Weber was in public area when he viewed Appellant's table, Sgt. Weber immediately recognized items as counterfeit based on their packaging, and DVDs were seized from table in public parking lot where Sgt. Weber had lawful right of access; thus, Sgt. Weber validly seized counterfeit items from Appellant's table and court properly denied Appellant's motion to suppress). Therefore, with respect to Appellant's first issue on appeal, we affirm on the basis of the trial court's opinion.

In his second issue, Appellant argues the Commonwealth failed to prove Appellant possessed at least one hundred counterfeit DVDs, which is necessary to grade selling unauthorized copies of recorded devices as a third-degree felony. Appellant claims MPAA expert, Bill Mock, watched only ten of the DVDs confiscated from Appellant's table, and the Commonwealth offered no proof that those ten DVDs were representative of at least one hundred of the confiscated DVDs. Appellant also submits the court improperly inferred from Bill Mock's testimony that the remaining one hundred and sixty-nine DVDs contained movies or portions of movies, in violation of the best evidence rule. Appellant concludes there was insufficient evidence to sustain his conviction of selling unauthorized copies of recorded devices as a third-degree felony, and we should reverse his conviction. We disagree.

As presented, Appellant's second issue challenges the sufficiency of the evidence for the grading of his conviction of selling unauthorized copies

of recorded devices as a third-degree felony, which also implicates the legality of the sentence. Our standard of review for a challenge to the sufficiency of the evidence is as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Jones*, 874 A.2d 108, 120-21 (Pa.Super. 2005) (quoting *Commonwealth v. Bullick*, 830 A.2d 998, 1000 (Pa.Super. 2003)).

"Issues relating to the legality of a sentence are questions of law…." *Commonwealth v. Diamond*, 945 A.2d 252, 256 (Pa.Super. 2008), *appeal denied*, 598 Pa. 755, 955 A.2d 356 (2008). "The defendant or the Commonwealth may appeal as of right the legality of the sentence." 42 Pa.C.S.A. § 9781(a). *See also Commonwealth v. Edrington*, 780 A.2d

721 (Pa.Super. 2001) (maintaining legality of sentence claims cannot be waived, where reviewing court has proper jurisdiction). When the legality of a sentence is at issue on appeal, our "standard of review over such questions is *de novo* and our scope of review is plenary." *Diamond, supra* at 256. "If no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction. An illegal sentence must be vacated…." *Commonwealth v. Pombo*, 26 A.3d 1155, 1157 (Pa.Super. 2011) (quoting *Commonwealth v. Bowers*, 25 A.3d 349, 352 (Pa.Super. 2011); *appeal denied*, 616 Pa. 666, 51 A.3d 837 (2012)).

The Crimes Code defines the offense of selling unauthorized copies of recorded devices in relevant part as follows:

> **§ 4116. Copying; recording devices**
>
> **(a) Definitions.**—As used in this section, the following words and phrases shall have the meanings given to them in this subsection:
>
> \* \* \*
>
> **"Recorded device."** Any phonograph record, disc, tape, film, videotape, video cassette or other tangible article, now known or later developed, upon which sounds or images or any combinations of sounds and images are recorded.
>
> \* \* \*
>
> **(d) Manufacture, sale or rental of illegal recording or recorded devices.**—It shall be unlawful for any person to knowingly manufacture, transport, sell, resell, rent, advertise or offer for sale, resale or rental or cause the manufacture, sale, resale or rental or possess for such

purpose or purposes any recorded device in violation of this section.

\* \* \*

**(g)  Grading of offenses.**—

(1) Any violation of the provisions of this section involving, within any 180-day period, at least 100 devices upon which motion pictures or portions thereof have been recorded…is a felony of the third degree.   A second or subsequent conviction is a felony of the second degree if at the time of sentencing the defendant has been convicted of another violation of this section.

(2) Any other violation of the provisions of this section not described in paragraph (1) upon a first conviction is a misdemeanor of the first degree and upon a second or subsequent conviction is a felony of the third degree if at the time of sentencing the defendant has been convicted of another violation of this section.

18 Pa.C.S.A. §§ 4116(a), (d), and (g).

Any fact that changes the grade of an offense must be submitted to the factfinder and proven beyond a reasonable doubt.  ***Commonwealth v. Panko***, 975 A.2d 1189, 1191 (Pa.Super. 2009), *appeal denied*, 618 Pa. 686, 57 A.3d 69 (2012).   Importantly, for purposes of grading, the Commonwealth's burden is not to establish the precise quantity, but only to present sufficient evidence from which a reasonable fact-finder could conclude the quantity was above the threshold amount required by statute. ***See Commonwealth v. Reiss***, 655 A.2d 163, 168 (Pa.Super. 1995) (holding Commonwealth presented sufficient evidence from which jury could

reasonably determine value of stolen items to grade defendant's theft conviction as felony instead of misdemeanor).

Instantly, the Commonwealth presented the testimony of Sgt. Weber at Appellant's stipulated bench trial. Sgt. Weber testified that he confiscated one hundred and seventy-nine DVDs, seventy-six CDs, and one DVD player from Appellant's table outside the 777 Market. Sgt. Weber also stated that the confiscated DVDs consisted of multiple copies of movie titles which were still in theaters at the time. Sgt. Weber further indicated that during his collection of the items from Appellant's table, Appellant demonstrated his ownership of the items when he stated, "I'm just trying to make a buck. Can I just get my stuff and go?" The Commonwealth also presented the stipulated testimony of Mr. Mock, who examined all of the DVDs Sgt. Weber confiscated from Appellant's table. Mr. Mock concluded that Appellant was offering counterfeit/pirated DVDs for sale, based on the following: (1) the DVD titles were movies still in theaters and the MPAA does not release movies on DVD until the movies are no longer in theaters; (2) the DVDs all had a purplish back indicative of recordable DVDs and the MPAA does not release DVDs on recordable DVDs; (3) the ten DVDs he viewed had poor quality pictures and sound, unlike DVDs released by the MPAA; (4) the DVDs did not contain the true name or address of the manufacturer or display company logos or trademarks, unlike DVDs released by the MPAA; and (5) the number of DVDs indicated that Appellant was offering the DVDs for sale.

The testimony at trial established Appellant's ownership of the DVDs and his intent to sell multiple copies of movie titles which were still in theaters. The Commonwealth's evidence also demonstrated the counterfeit/pirated status of all of Appellant's DVDs, due to their failure to comport with the MPAA standards. Based on this evidence, the court could reasonably infer that at least one hundred of Appellant's counterfeit DVDs contained movies or portions of movies. *See Reiss, supra*. Therefore, the evidence was sufficient to support Appellant's conviction of selling unauthorized copies of recorded devices as a third-degree felony, and Appellant's second issue on appeal merits no relief. *See Jones, supra*; 18 Pa.C.S.A. § 4116(g).

In his third issue, Appellant argues the Commonwealth failed to prove that Appellant's DVDs bore any marks which meet the new definition of "counterfeit mark" necessary to sustain a conviction of trademark counterfeiting. Appellant specifically asserts the Commonwealth did not present evidence that any mark on Appellant's DVDs was registered, any registered mark was in use on Appellant's DVDs, or that Appellant's DVDs bore a mark identical with or substantially indistinguishable from a registered mark. Appellant claims the Commonwealth's evidence established only that the DVDs bore homemade labels instead of actual inserts. Appellant also avers that MPAA expert, Bill Mock, testified he did not observe any company logos or trademarks on Appellant's DVDs.

Appellant concludes the evidence was insufficient to support his conviction of trademark counterfeiting, and we must reverse his conviction. We agree.

The Crimes Code defined the prior version of the trademark counterfeiting statute in relevant part as follows:

**§ 4119. Trademark counterfeiting**

**(a) Offense defined.—**Any person who knowingly manufactures, uses, displays, advertises, distributes, offers for sale, sells or possesses with intent to sell or distribute any items or services bearing or identified by a counterfeit mark shall be guilty of the crime of trademark counterfeiting.

\* \* \*

**(i) Definitions.—**As used in this section, the following words and phrases shall have the meanings given to them in this subsection:

**"Counterfeit mark."** Any of the following:

(1) Any unauthorized reproduction or copy of intellectual property.

(2) Intellectual property affixed to any item knowingly sold, offered for sale, manufactured or distributed or identifying services offered or rendered, without the authority of the owner of the intellectual property.

**"Intellectual property."** Any trademark, service mark, trade name, label, term, device, design or word adopted or used by a person to identify that person's goods or services.

18 Pa.C.S.A. §§ 4119(a) and (i) (prior version). Significantly, on October 5, 2009, the Pennsylvania Supreme Court declared that version of Section 4119 unconstitutionally overbroad. *See* ***Commonwealth v. Omar***, 602 Pa.

- 13 -

595, 981 A.2d 179 (2009).

The legislature subsequently amended Section 4119 and the new version of the trademark counterfeiting statute went into effect on December 20, 2010. The Crimes Code now defines the offense of trademark counterfeiting in relevant part as follows:

**§ 4119. Trademark counterfeiting**

**(a) Offense defined.**—Any person who knowingly and with intent to sell or to otherwise transfer for purposes of commercial advantage or private financial gain:

\* \* \*

(3) offers for sale;

\* \* \*

any items or services bearing or identified by a counterfeit mark shall be guilty of the crime of trademark counterfeiting.

\* \* \*

**(i) Definitions.**—As used in this section, the following words and phrases shall have the meanings given to them in this subsection:

**"Counterfeit mark."** A spurious mark that meets all of the following:

(1) Is applied to, used or intended to be used in connection with an item or service.

(2) Is identical with or substantially indistinguishable from a mark registered and in use in this Commonwealth, any other state or on the principal register in the United States Patent and Trademark Office, whether or not the person knew the mark was registered.

- 14 -

(3) The application of which is either:

(i) likely to cause confusion, to cause mistake or to deceive; or

(ii) otherwise intended to be used on or in connection with the item or service for which the mark is registered.

18 Pa.C.S.A. § 4119(a)(3) and (i) (new version).

Instantly, the trial court relied on the old version of Section 4119 when it convicted Appellant of trademark counterfeiting. (**See** Trial Court Opinion, filed April 16, 2015, at 8-9). Our Supreme Court declared the prior version of the statute unconstitutional in 2009, and the Pennsylvania legislature enacted a new version of the statute in 2010. **See Omar, supra**. Importantly, the new version of the statute contains a much more stringent definition of "counterfeit mark." **See** 18 Pa.C.S.A. § 4119(i). Applying the new version of Section 4119 to Appellant's case, the Commonwealth had to prove Appellant's DVDs bore counterfeit marks which met the requirements contained in Section 4119(i). **See id.** The Commonwealth concedes it failed to meet this burden. Additionally, the record is devoid of evidence to prove the items seized from Appellant bore spurious marks identical to or substantially indistinguishable from a registered mark in use in this Commonwealth, any other state or on the principal register in the United States Patent and Trademark Office. **See id.** Thus, the evidence was insufficient to support Appellant's conviction of trademark counterfeiting,

and we must reverse that conviction. ***See Jones, supra***.

Based on the foregoing, we affirm Appellant's conviction of selling unauthorized copies of recorded devices, reverse Appellant's conviction of trademark counterfeiting, vacate the judgment of sentence, and remand the for resentencing on the remaining conviction because we have disturbed the court's overall sentencing scheme. ***See Commonwealth v. Thur***, 906 A.2d 552, 569 (Pa.Super. 2006), *appeal denied*, 596 Pa. 745, 946 A.2d 687 (2008) (holding that if disposition upsets overall sentencing scheme of trial court, this Court must remand so trial court can restructure sentencing scheme).

Judgment of sentence vacated; case remanded for resentencing. Jurisdiction is relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/11/2016

- 16 -

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

COMMONWEALTH OF PENNSYLVANIA   :    CP-51-CR-0009550-2014

                       :

**FILED**

v.

APR 16 2015     **SUPERIOR COURT**

STEVEN SMALLS     Criminal Appeals Unit  NO. 92 EDA 2015
First Judicial District of PA

**OPINION**

THOMAS STREET, J.                            April 16, 2015

## I.    OVERVIEW AND PROCEDURAL HISTORY

This is an appeal by the Defendant, Steven Smalls, of this Court's order denying the Defendant's motion to suppress physical evidence, namely DVDs, and judgment of sentence. The Defendant was arrested and charged with Trademark Counterfeiting- Offers for Sale[1] and Retail Recorded Device[2] for events that occurred on August 11, 2014. The Defendant filed a motion to suppress physical evidence on September 17, 2014. On December 9, 2014, a suppression hearing and stipulated non-jury trial were held before this Court. The Defendant's Motion to Suppress was denied. At the conclusion of trial, the Defendant was found guilty of the above charges. On the same day, the Defendant was sentenced to serve twenty four (24) months of reporting probation and ordered to pay five hundred dollars ($500) in restitution.

On January 6, 2015, the Defendant filed a timely Notice of Appeal. On February 20, 2015 pursuant to Pa.R.A.P. 1925(b), this Court ordered a Concise Statement of Errors

CP-51-CR-0009550-2014 Comm. v. Smalls, Steven
Opinion



7283026881

[1] 18 Pa.C.S. § 4119 §§ A3
[2] 18 Pa.C.S. § 4116 §§ D

1

Complained of on Appeal within twenty-one (21) days. On March 10, 2015, the Defendant filed a Concise Statement of Errors Complained of on Appeal.

## II.     FACTUAL HISTORY

Sergeant Michael Weber testified credibly that on August 11, 2014 at approximately 5:00 p.m. his tour of duty took him to 2800 Morris Street in Philadelphia, Pennsylvania. (N.T. 12/9/14 p. 6).[3] Sergeant Weber explained that this location is called 777 Market and is a seven-eleven type of convenience store. (N.T. 12/9/14 p. 7). Sergeant Weber observed one of his units pulled over inside the parking lot. *Id.* He identified Officer Buccini and Officer Dennis inside the vehicle. *Id.* As Sergeant Weber entered the parking lot while in his vehicle, he observed the Defendant, Steven Smalls enter the business. *Id.* Sergeant Weber stated that he saw a table set-up outside of the store and it initially appeared to him that the Defendant was selling books. (N.T. 12/9/14 p. 7). Sergeant Weber exited his vehicle, inspected the table more closely, and determined that the books were being used as a cover to conceal counterfeit DVDs and movie items. *Id.* When Sergeant Weber began to collect the items, the Defendant approached him and stated "I'm just trying to make a buck. Can I just get my stuff and go?" *Id.*

Sergeant Weber previously arrested the Defendant at the exact same location for selling counterfeit DVDs and music. (N.T. 12/9/14 pp. 7-8). Based on this prior contact and the Sergeant's present observations, the Defendant was placed under arrest. *Id.* One hundred seventy nine (179) movie titles, seventy six (76) music titles and a battery operated DVD player were recovered and placed on Philadelphia property receipt 3168321. (N.T. 12/9/14 p. 8). Sergeant Weber also stated that all of the movies were currently playing in theaters at the time of

---

[3] All references to the record refer to the suppression hearing and stipulated non-jury trial recorded on December 9, 2014.

2

arrest and were being sold by the Defendant in multiple quantities. *Id.* Sergeant Weber cited

some examples: *Guardians of the Galaxy, Hercules, Teenage Mutant Ninja Turtles* and *Lucy*. *Id.*

Sergeant Weber described the table as a standard folding table by Home Depot or Lowes.

(N.T. 12/9/14 p. 9). He stated:

> The table top itself was covered with some kind of cloth towels or
> blankets. There were books on top of that. It was set up in such a
> way that you would be able to move a book and flip up the cloth to
> see all the DVDs and movies that were for display underneath.
> (N.T. 12/9/14 p. 9).

Sergeant Weber testified that he was able to see underneath the table because the center seam

was split (where the two pieces of cloth met) and through this opening he could see the

cellophane cases of the DVDs. (N.T. 12/9/14 pp. 9-10). Sergeant Weber then moved the cloth

out of the way to make a closer observation. (N.T. 12/9/14 pp. 9, 11). He described these cases

as sleeves, like envelopes. (N.T. 12/9/14 p. 10). Sergeant Weber explained that none of the

casing was genuine "it was just clear, plastic envelopes with like homemade type of titles inside

instead of the actual inserts for CDs. It was pixilated and grainy." At this time, the Defendant

had walked away from the table which was in public. (N.T. 12/9/14 p. 9).

Sergeant Weber stated that the DVDs did not look professionally generated. (N.T.

12/9/14 p. 10). Based on his prior encounter with the Defendant and his prior experience, he

believed that the DVDs were counterfeit. (N.T. 12/9/14 p. 11). As Sergeant Weber began

collecting the DVDs and music into a milk crate, the Defendant approached. *Id.*

On cross examination Sergeant Weber testified that the cases that he could see were

consistent with counterfeit titles that he had encountered before in his professional career and

from the previous encounter with the Defendant. (N.T. 12/9/14 pp. 11-12). When questioned

about his testimony at the preliminary hearing, Sergeant Weber affirmed that he testified that he

3

could see cellophane packaging when he lifted back the blanket and had to move the books back to see the DVDs. (N.T. 12/9/14 pp. 13-15). Sergeant Weber stated again that this was his second encounter with the Defendant. (N.T. 12/9/14 p. 18). He stated that the Defendant was initially at the table when he approached, but then the Defendant walked away from the table and went into the store. (N.T. 12/9/14 pp. 18-19).

Sergeant Weber testified that when he started looking at the table, the Defendant came back out and made a statement that implicated that these items were his property. (N.T. 12/9/14 p. 19). He affirmed that he had arrested the Defendant before at this very table. *Id.* Sergeant Weber stated that "everything was on top of the table...the player, the books, the blanket, the DVDs, they were all along the surface of the table." (N.T. 12/9/14 p. 20). He clarified for the Court that the DVDs and CDs were on the surface of the folding table covered by two blankets with books positioned to hold the corners down. *Id.* He added that at the very top of the table above the blanket were books and a DVD player, but that none of the DVDs were displayed above the blanket. (N.T. 12/9/14 p. 20).

On redirect examination, Sergeant Weber read his prior testimony from the preliminary hearing, stating:

> Line 20, "QUESTION: The DVDs were not visible to passersby or
> to yourself."
> ANSWER: Not when I was in the car. When I approached the
> table you could see them." (N.T. 12/9/14 p. 22).

Ms. Kimberly Biddick testified that on August 11, 2013 at approximately 5:00 p.m. she was at the "777" corner store. (N.T. 12/9/14 p. 23). She identified the Defendant, Steven Smalls, and stated that he was outside of "777" market that day. (N.T. 12/9/14 p. 24). She stated that the Defendant had books on a table and had a shelf next to it. *Id.* She stated she was present when Sergeant Weber approached the table and explained:

4

Steven wasn't outside. I was outside. He was in the store. The officer, two of the, I don't know their names, but they came up behind me and startled me a little bit. I was reading the back of several of the books there because Steven always lets me borrow them and bring them back, and they asked me what's going on here. And I was like, what are you talking about? And they said what is going on here? He asked me what's under the sheet? I said, what do you mean what's under the sheet? So he said that sheet. He started to lift up, move the books and lift it up, the white sheet and there wasn't anything there. So they started to lift up the black sheet. He's like, what's this? The next thing you know Steven comes out of the store, then they started with him, started talking to him, and gout loud with him, and the next thing I know—he had a thing on his hand. He hurt his hand and they put him in handcuffs.

(N.T. 12/9/14 pp. 24-25). Ms. Biddick stated she then went to get her fiancé and that the Defendant asked her fiancé to take care of things for him. *Id.* She stated that before the Officers pulled up the sheet she was not able to see anything. *Id.*

On cross-examination, Ms. Biddick testified that she could not decipher which officer did what and stated that she had no idea how long the officers were there until they startled her. (N.T. 12/9/14 pp. 26-27). She explained that she was on the ground looking at the books on the bottom of the shelf. (N.T. 12/9/14 p. 26). She further described the table as a folding table with a black sheet that goes all the way down and a white sheet that goes halfway with a tall shelf that is about five (5) to six (6) feet high. *Id.*

A stipulation by and between counsel was entered that if Bill Mock were called to testify as a representative of the Motion Picture Association of America (MPAA), he would testify that he examined one hundred seventy-six (176) DVDs placed on property receipt 3168321, and determined they were counterfeit or pirated being that they did not contain the true name or address of the manufacturer. (N.T. 12/9/14 pp. 46-47). It was further stipulated that Mr. Mock would testify that he did not observe any company logos or trademarks throughout the examination and placed a value of eleven dollars ($11) per title for a total loss of $1,936. (N.T.

5

12/9/14 p. 47). Moreover, Mr. Mock[4] would testify that he knew that the DVDs were counterfeit because the movies were still in the theater. *Id.* The MPAA does not put those movies out on DVD until they are out of the theater. *Id.* Additionally, the DVDs were on white discs with no studio information on the front. *Id.* The backs of the DVDs had a purplish tint which indicates that they are DVDR, a recordable DVD, whereas the MPAA does not put their movies on recordable DVDs. *Id.* Mr. Mock would also state that he viewed ten (10) of the DVDs which had poor quality picture and sound which indicates that they were counterfeit. *Id.* Lastly, Mr. Mock would testify that the large amount of movies, one hundred seventy-six (176) in total, and the fact that there were multiple copies, indicates that the DVDs were offered for sale as opposed to personal use. *Id.*

## III.  ISSUES

In the Pa.R.A.P. 1925(b) Concise Statement of Errors Complained of on Appeal, the Defendant identified the following issues:

1. Insufficiency of the evidence and due process require a reversal of the conviction for trademark counterfeiting, 18 Pa.C.S. § 4119, as amended and narrowed by Act 74 of 2010, because the confiscated DVDs bore only homemade movie titles and no company logos or trademarks and, thus, there was no evidence that (i) they bore a "counterfeit mark" "identical with or substantially indistinguishable from" a protected mark; (ii) that any mark was "registered" or (iii) that any "registered" mark was "in use." 18 Pa.C.S. § 4119(i).

2. Insufficiency of the evidence and due process require a reversal of the felony of the third degree conviction for copying; recording devices, 18 Pa.C.S. § 4116, as the proper gradation was a misdemeanor of the first degree because (i) there was no proof that "at least 100" DVDs had movies recorded on them where the Commonwealth witness only watched 10 DVDs; and (ii) there was no evidence that the 10 viewed DVDs were representative of at least 100 DVDs, and any *post hoc*

---

[4] The notes of testimony refer to a Bill "Mop" as representative of the Motion Picture Association of America (MPAA). However, upon examination, this Court finds that the representative's name is Bill Mock and will refer to him as such for purposes of the opinion.

extrapolation at this time would also violate the best evidence rule, Pa. R. Evid. 1002.

3. The lower court erred and abused its discretion by denying a motion to suppress physical evidence where the police officer lacked reasonable suspicion or probable cause to search Mr. Smalls' table by lifting up the tablecloth and seizing DVDs were out of view underneath the cloth. U.S. Const. Amend. IV, XIV; Pa. Const. Art. I, § 8.

## IV.   STANDARD OF REVIEW

A challenge to the sufficiency of evidence is a question of law. *Commonwealth v. Heater*, 2006 PA Super 86, 11, 899 A.2d 1126, 1131 (2006) (*citing Commonwealth v. Widmer*, 560 Pa. 308, 319, 744 A.2d 745, 751 (2000)). The role of an appellate court in reviewing the weight of the evidence is very limited. *Commonwealth v. Holmes*, 444 Pa. Super. 257, 264, 663 A.2d 771, 774 (1995). When reviewing a sufficiency of the evidence claim, a court must review the evidence and all reasonable inferences in the light most favorable to the Commonwealth as the verdict winner, and must determine if the evidence, thus viewed, is sufficient to enable the fact-finder to find every element of the offense beyond a reasonable doubt. *Commonwealth v. Valette*, 531 Pa. 384, 388, 613 A.2d 548, 549 (1992); *Commonwealth v. Marks*, 704 A.2d 1095 (Pa. Super. 1997).

A reviewing court may not weigh the evidence or substitute its own judgment for that of the fact-finder, who is free to believe all, part, or none of the evidence. *Commonwealth v. Adams*, 2005 Pa. Super. 296, 882 A.2d. 496, 498-99 (Pa. Super. 2005). An appellate court may reverse a lower court's verdict only in the instance that it is so contrary to the evidence as to shock one's sense of justice. *See Commonwealth v. Hunzer*, 868 A.2d 498, 506-507 (Pa.Super.2005), appeal denied, 584 Pa. 673, 880 A.2d 1237 (2005). Whether a new trial should be granted on the ground that a conviction was against the weight of the evidence is addressed to the sound discretion of the trial judge, and that decision will not be reversed on appeal absent a

7

showing of abuse of discretion. *Commonwealth v. Petteway*, 847 A.2d 713, 716 (Pa. Super. 2004) (*citing Commonwealth v. Davis*, 799 A.2d 860, 865 (Pa. Super. 2002)).

Additionally, the Commonwealth may satisfy its burden of proof entirely by circumstantial evidence. *See Commonwealth v. Adams*, 2005 Pa. Super 296, 882 A.2d. 496, 499 (Pa. Super 2005); *see also Commonwealth v. Murphy*, 2002 PA Super 84, 795 A.2d 1025, 1038-39 (Pa. Super. 2002) ("The fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence."). "If the record contains support for the verdict, it may not be disturbed." *Adams*, 882 A.2d. at 499.

## V. **DISCUSSION**

First, the Defendant argues that the evidence was insufficient to find him guilty of Trademark Counterfeiting.[5] Specifically, the Defendant asserts that the confiscated DVDs bore only homemade movie titles and not company logos or trademarks and that there was no evidence that (i) they bore a "counterfeit mark" "identical with or substantially indistinguishable from" a protected mark; (ii) that any mark was "registered" or (iii) that any "registered" mark was "in use." 18 Pa.C.S. § 4119(i). This Court disagrees.

The offense of trademark counterfeiting is defined in 18 Pa.C.S. § 4119(a) as follows: "Any person who knowingly manufacture, uses, displays, advertises, distributes, offers for sale, sells or possess with intent to sell or distribute any items or services bearing or identified with a counterfeit mark shall be guilty of the crime of trademark counterfeiting. The term "counterfeit mark" is defined in 18 Pa.C.S. § 4119(i) as any of the following: (1) any unauthorized reproduction or copy of intellectual property; or (2) intellectual property affixed to any item knowingly sold, offered for sale, manufactured or distributed or identifying services offered or

---

[5] 18 Pa.C.S. § 4119

8

rendered, without the authority of the owner of the intellectual property. The term "intellectual property" is defined by the statute as "any trademark, service mark, trade name, label, term, device, design or word adopted or used by a person to identify that person's goods or *services*". (emphasis added).

Here, Bill Mock, an expert in the identification of counterfeit DVDs from the Motion Picture Association of America (MPAA) determined that the DVDs possessed by the Defendant were counterfeit because the DVDs did not bear the true name or address of the manufacturer; the company's logo or trademark was absent on the DVDs; the discs lacked studio information; the backs of the DVDs were a purplish tint indicating they were recordable, the discs had poor picture quality and sound; and the DVD movies were currently playing in theaters. (N.T. 12/9/14 pp. 46-47). Lastly, Mr. Mock determined that the large amount of movies, one hundred seventy-six (176) in total, and the fact that there were multiple copies, indicates that the DVDs were offered for sale as opposed to personal use. *Id.*

Mr. Mock's testimony, which was stipulated to by the Defendant, established that the DVDs were unauthorized reproductions or copies of intellectual property under Section 4119(i)(1). This subsection does not require the presence of a counterfeit logo or mark on the item. The Court found this evidence, combined with Sergeant Weber's testimony, to be sufficient proof beyond a reasonable doubt that the DVDs were not authentic copies. Since they were not authentic, they bore "unauthorized reproductions" of the authentic trademark, which satisfies the definition of a counterfeit mark. This testimony clearly establishes that Defendant was in possession of "unauthorized reproductions or copies of intellectual property." 18 Pa. C.S. § 4119(i)(l) (defining counterfeit mark).

9

Second, the Defendant argues that the evidence was insufficient to find him guilty of a felony of the third degree for Retail Recorded Device.[6] Specifically, the Defendant asserts that the proper gradation was a misdemeanor of the first degree because (i) there was no proof that "at least" 100 DVDs had movies recorded on them where the Commonwealth witness only watched 10 DVDs; and (ii) there was no evidence that the 10 viewed DVDs, were representative of at least 100 DVDs, and any post hoc extrapolation at this time would also violate the best evidence rule, Pa. R. Evid. 1002. This Court disagrees.

The offense of trademark counterfeiting is a felony of the third degree if "the violation involves more than 100 but less than 1,000 items bearing a counterfeit mark or the total retail value of all items or services bearing or identified by a counterfeit mark is more than $2,000, but less than $10,000." 18 Pa.C.S. § 4119(c)(2)(ii).

Here, Sergeant Weber testified that one hundred seventy nine (179) movie titles, seventy six (76) music titles and a battery operated DVD player were discovered at the Defendant's table and placed on property receipt. (N.T. 12/9/14 p. 8). Sergeant Weber stated that the cases that he could see were consistent with counterfeit titles that he had encountered before in his professional career and from the previous encounter with the Defendant. (N.T. 12/9/14 pp. 11-12). Sergeant Weber stated that the DVDs did not look professionally generated. (N.T. 12/9/14 p. 10). He stated that the movies were currently playing in theaters at the time of arrest and were being sold by the Defendant in multiple quantities, citing examples: *Hercules, Teenage Mutant Ninja Turtles* and *Lucy. Guardians of the Galaxy*. (N.T. 12/9/14 p. 8).

Additionally, the MPAA expert, Bill Mock, determined that the DVDs possessed by the Defendant were counterfeit based on other factors beyond poor picture quality and sound from watching the videos in question. The DVDs did not bear the true name or address of the

---

[6] 18 Pa.C.S. § 4116

10

manufacturer; the company's logo or trademark was absent on the DVDs; the discs lacked studio information, the backs of the DVDs were a purplish tint indicating they were recordable, and the DVD movies were currently playing in theaters. (N.T. 12/9/14 pp. 46-47). Mr. Mock's testimony established that the DVDs were unauthorized reproductions or copies of intellectual property under Section 4119(i)(1). Accordingly, Sergeant Weber's testimony coupled with Mr. Mock's expert opinion and observations, overwhelmingly supports a finding that more than one hundred (100) items bore a counterfeit mark. As such, the grading of Trademark Counterfeiting as a felony of the third degree was proper in the instant matter.

Third, the Defendant argues that this Court erred and abused its discretion by denying his motion to suppress. Specifically, the Defendant asserts that the police officer lacked reasonable suspicion or probable cause to search the Defendant's table by lifting up the tablecloth and seizing DVDs that were out of view underneath the cloth. This Court disagrees.

A warrantless arrest is valid when probable cause exists, which is determined by the totality of the circumstances test. *Illinois v. Gates*, 462 U.S. 213, 233, 103 S. Ct. 2317, 2329, 76 L.Ed.2d 527 (1983); *Commonwealth v. Evans*, 546 Pa. 417, 422, 685 A.2d 535, 537 (1996). In determining whether there is probable cause, a court must ascertain whether, "the facts and circumstances which are within the knowledge of the officer at the time of arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime." *Commonwealth v. Rodriguez*, 526 Pa. 268, 272-273, 585 A.2d 988, 990 (1991).

A determination of probable cause at the moment of search or arrest is based on whether the officer had reasonable information to satisfy a prudent person in believing the person committed an offense. *See Henry v. U.S.*, 361 U.S. 98 (1959); *Brinegar v. U.S.*, 338 U.S. 160

11

(1949), *Commonwealth v. Richards*, 327 A.2d 63 (Pa. 1974). A police officer's training and experience may be used as a relevant factor to determine whether probable cause exists, but probable cause should not "be based on a police officer's subjective opinion standing alone." *Commonwealth v. Thompson*, 604 Pa. 198, 210, 985 A.2d 928, 935 n. 9 (2009). Where, as here, an officer has extended his stop to investigate possible offenses, the Commonwealth bears the burden of establishing that the officer had sufficient reasonable suspicion of unlawful activity to justify any further investigatory measures or steps taken. *See Commonwealth v. Jones*, 874 A.2d 108 (Pa. Super. 2005).

In the instant matter, it is not evident that the Defendant had a reasonable expectation of privacy for a table open to the public for commercial use. Moreover, the evidence at the suppression hearing established that Sergeant Weber had reasonable suspicion and probable cause to search the Defendant's table. (N.T. 12/9/14 pp. 9-10). Sergeant Weber testified credibly that he was able to see underneath the blanket because the center seam was split (where the two pieces of cloth met) and through this opening he could see the cellophane cases of the DVDs. (N.T. 12/9/14 pp. 9-10). The Defendant's witness, Ms. Biddick, corroborated this testimony when she described the table as a folding table with a black sheet that goes all the way down and a white sheet that goes halfway down. (N.T. 12/9/14 p. 26). Equipped with reasonable suspicion to investigate further and make a closer observation, Sergeant Weber moved the cloth out of the way after approaching the table. (N.T. 12/9/14 pp. 9, 11). Additionally, Ms. Biddick was initially unaware of the officers' presence and could not rebut Sergeant Weber's testimony as she stated she was on the ground looking at books on the bottom shelf of the Defendant's display. *Id.*

12

Sergeant Weber testified credibly that the DVDs did not look professionally generated, the cases were consistent with counterfeit titles that he had encountered before in his professional career and from the previous encounter with the Defendant, all of the movies were currently playing in theaters at the time of arrest, and were being sold by the Defendant in multiple quantities. (N.T. 12/9/14 pp. 8. 10, 11). Based on his prior encounter with the Defendant in this very location and his prior experience, Sergeant Weber believed that the DVDs were counterfeit. (N.T. 12/9/14 p. 11). These facts and circumstances, known to the officer at the time of the arrest, would lead a reasonable person to believe that a crime was being committed. The officer had reasonable suspicion and probable cause to search the Defendant.

The requirements for a lawful, warrantless seizure of evidence are that the officer must be in a lawful place of observation; the incriminating character of the object must be immediately apparent and the officer must have lawful access to the object itself. *Commonwealth v. McCullum*, 602 A.2d 313, 320 (Pa. 1992), *citing Horton v. California*, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990). In the present case, all of these requirements have been met.

First, Sergeant Weber was patrolling 777 Market, a public area, when he encountered the Defendant and the table. (N.T. 12/9/14 p. 7). When Sergeant Weber seized the DVDs and placed them in a milk crate there was no warrantless intrusion into an area protected by privacy concerns. Sergeant Weber was making a lawful arrest while in a public area and saw merchandise under a blanket on a table where the contraband was located. Hence, the officers were in a lawful place of observation.

Second, the incriminating character of the evidence was apparent. Sergeant Weber testified that the DVDs did not look professionally generated, the cases were consistent with counterfeit titles that he had encountered before in his professional career and from the previous

13

encounter with the Defendant, all of the movies were currently playing in theaters at the time of arrest, and were being sold by the Defendant in multiple quantities to justify the seizure. (N.T. 12/9/14 pp. 8. 10, 11, 12). Sergeant Weber observed the DVDs under the blanket and concluded that the Defendant was selling the counterfeit DVDs and using books to conceal this operation. (N.T. 12/9/14 p. 7). Consequently, all of the DVDs were subject to seizure as contraband.

Finally, the DVDs were located where the officer had a lawful right of access. The DVDs were on a table at a store front under a blanket. (N.T. 12/9/14 pp. 7-8). The seizure involved no entry into a separate area such as a vehicle or a building. Accordingly, the three-pronged requirement for a lawful, warrantless seizure of evidence was satisfied.

## VI. CONCLUSION

For all of these reasons, this Court's decision should be affirmed.

BY THE COURT:

SIERRA THOMAS STREET, J.

Dated: April 16th, 2015

14